OWENS & PYPER, P.L.C.
3030 N. Central Avenue, Ste. 1406
Phoenix, Arizona 85012
Phone: 602-265-4800
Fax: 602-265-0005
Mark B. Pyper, (#011051 AZ)
Email: pyperlaw@aol.com

Proposed Attorneys for Debtors-in-Possession

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF NEVADA

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| REZA ATHARI & FATANEH ATHARI, | ) | Case No. 2:14-bk-10723 |
| | ) | |
| | ) | **DEBTOR'S CHAPTER 11** |
| Debtors. | ) | **DISCLOSURE STATEMENT** |
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| REZA ATHARI & ASSOCIATES, P.L.L.C | ) | Case No. 2:14-bk-10724 |
| | ) | |
| | ) | |
| Debtor. | ) | |
| | ) | |

Debtors-in-Possession Reza Athari and Fataneh Athari and debtor-in-possession Reza Athari & Associates, P.L.L.C., ( hereafter collectively referred to as the "Debtor,") hereby submits its proposed "Disclosure Statement," arising from and related to the above-captioned bankruptcy cases.

I.    INTRODUCTION

This Disclosure Statement contains information about the Debtor and describes its Plan of Reorganization (the "**Plan**") filed on April ___, 2014, in accordance with the United States Bankruptcy Code, 11 U.S.C.  Sections  101. *et seq.* (the "**Bankruptcy Code**").  A full copy of

Page 1

the Plan is attached to this Disclosure Statement as **Exhibit A**.

**YOUR RIGHTS MAY BE AFFECTED. YOU SHOULD READ THE PLAN AND THIS DISCLOSURE STATEMENT CAREFULLY AND DISCUSS THEM WITH YOUR ATTORNEY. IF YOU DO NOT HAVE AN ATTORNEY, YOU MAY WISH TO CONSULT ONE.**

The proposed distributions under the Plan are discussed at pages 10-12 of this Disclosure Statement. Secured creditors are classified into two (2) classes (Secured Unimpaired and Secured Impaired). Unsecured creditors are classified in two (2) separated classes, which include Classes 3 ( Priority Unsecured Claims) and 4 ( General Unsecured Creditors). Equity Security claims are set forth in Class 5. General Unsecured Creditors will receive a distribution of 5% of their allowed claims (the "**Unsecured Creditors' Distribution**"), to be distributed in the ordinary course of the Debtor's business operations over the next five (5) years. The Debtor will approve or file objections to proof of claims filed in this case. Those claims that are approved by the Debtor, or determined valid by the Court shall be paid in accordance with their treatment under the various categories.

### PURPOSE OF THIS DOCUMENT

This Disclosure Statement describes:

- The Debtor and the significant events during the bankruptcy case;
- How the Plan proposes to treat claims of the type you hold (i.e., what you will receive for your claim if the plan is confirmed);
- Who can vote on or object to the plan;
- What factors the Bankruptcy Court (the "**Court**") will consider when deciding whether to confirm the Plan;
- Why the Debtor believes the Plan is feasible, and how the treatment of your claim

under the Plan compares to what you would receive on your claim in liquidation: and

- The effect of confirmation of the plan.

Be sure to read the Plan as well as the Disclosure Statement. This Disclosure Statement describes the Plan, but it is the confirmed Plan itself that will establish and control your rights.

**Deadlines for Voting and Objecting;  Date of Plan Confirmation Hearing**

The court has not yet confirmed the Plan described in this Disclosure Statement. This section describes the procedures pursuant to which the Plan  will or will not be confirmed.  In addition, included with this Disclosure Statement is the Notice of Confirmation, which described the objection deadlines and important Court dates relevant here.

**Time and Place of the Hearing to Confirm the Plan.**

The court will hold a hearing on  _____, **2010 at** _____ **p.m.**  to determine whether to confirm the Plan, in Courtroom 3, at the United States Bankruptcy Court for the District of Nevada, 300 South Las Vegas Boulevard, Las Vegas, Nevada, 89101.

**Deadline for Voting to Accept or Reject the Plan.**

If you are entitled to vote to accept or reject the Plan, enclosed is a ballot describing your claim.  Please complete the ballot, as indicated, and return the ballot in the enclosed envelope to the Debtor's counsel, Owens & Pyper, P.L.C. – 3030 N. Central Avenue, Ste. 1406, Phoenix, Arizona 85012, Attn: Mark B. Pyper,  Esq.  See section IV.A. below for a discussion of the voting eligibility requirements.

Your ballot must be received by _____, **2010,** or it will  **NOT**  be counted.

**Deadline for Objecting to Confirmation of the Plan.**

Objections to the confirmation of the Plan must be filed with the court and served upon (a) the Debtor's counsel   Owens & Pyper, P.L.C. – 3030 N. Central Avenue, Ste. 1406, Phoenix, Arizona 85012,  Attn: Mark B. Pyper,  Esq.  and (b) The Office of the United States

Page 3

Trustee by _____, **2010.**

**Identify of Person to contact for more information.**

If you want additional information about the Plan, you should contact the Debtor's counsel, Owens & Pyper, P.L.C. – 3030 N. Central Avenue, Ste. 1406, Phoenix, Arizona 85012, Attn: Mark B. Pyper, Esq.

## DISCLAIMER

**THE COURT APPROVED THIS DISCLOSURE STATEMENT AS CONTAINING ADEQUATE INFORMATION TO ENABLE PARTIES AFFECTED BY THE PLAN TO MAKE AN INFORMED DECISION ABOUT ITS TERMS. THE COURT HAS NOT YET DETERMINED WHETHER THE PLAN MEETS THE LEGAL REQUIREMENTS FOR CONFIRMATION, AND THE FACT THAT THE COURT APPROVED THIS DISCLOSURE STATEMENT DOES NOT CONSTITUTE AN ENDORSEMENT OF THE PLAN BY THE COURT, OR A RECOMMENDATION THAT IT BE ACCEPTED.**

**II. BACKGROUND**

**Description and history of the Debtor's business**

Debtors Reza Athari and Fataneh Athari, are husband and wife who reside in Las Vegas, Nevada. Mr. Reza Athari is an attorney licensed by the State of California and is in good standing. Mr. Athari has practiced law for 20 years and is designated a immigration law specialist by the State Bar of California. Mr. Athari is the managing member of Co-Debtor Reza Athari & Associates, P.L.L.C., (hereafter "RAA") which is a Nevada professional limited liability company ( the "Law Practice.") Mr. Athari wholly owns RAA, which in turn, operates a multi-state law practice with offices in Nevada, Utah and California. Mr. Athari and RAA shall hereafter be collectively referred to as "RAA."

RAA owns a Las Vegas residence together with two commercial office buildings in Clark County, Nevada. The first commercial office building houses the RAA main office and leases commercial office space to third parties. This commercial office building shall hereafter be referred to as the "Pepper Lane" Building. The next office building is located in North Las Vegas, Nevada, and currently has no tenants. RAA leases ground to a cellular company upon which a cellular tower has been erected. This second commercial office building shall hereafter be referred to as the "Reynolds" Building.

As set forth above, the Debtor operates a multi-state law practice with offices in Las Vegas, Nevada, San Diego, California, St. George, Utah and Salt Lake City, Utah (hereafter "Satellite Offices.") Each office is owned and operated by separate limited liability companies wherein the Debtor has a controlling interest.

The Debtor's Las Vegas office is profitable and generates sufficient income to cover lease expenses, office expenses, wages and salaries as well as fund short falls that appear from time to time in the Satellite Offices. The commercial lease income generated from the Pepper Lane Building generates sufficient income to cover the monthly mortgage payment on the Pepper Lane Building. The commercial lease income generated from the Reynolds Building does not generate sufficient income to cover the monthly mortgage payment, taxes, utilities or property insurance.

The Debtor's case is not complex, insomuch as the estate's assets are comprised of real property and the revenue generated by that property together with the income generated by the law practice. Debtor may endure some issues related to the modification of the loan of Boulder Dam Credit Union on the Pepper Lane Building. Debtor intends to surrender the Reynolds Building. Debtor intends to retain his residence and pay it according to the terms of the existing Boulder Dam Credit Union loan with certain proposed modification that include the extension of term and the reduction in the interest rate. Debtor's case is a direct result of the precipitous fall

of the real estate market in the United States generally and the Las Vegas, Nevada, market specifically. Absent the filing of the present Chapter 11 bankruptcy case, the Debtor would be facing a potential seven figure deficiency claim by the lender on the Reynolds Building as well as potential default under the Pepper Lane Building.

### Insiders of the Debtor

The Debtor consists of Reza Athari and Fataneh Athari together with their wholly owned law practice previously denominated as "RAA." Reza and Fataneh Athari are "insiders" as to Co-Debtor Reza Athari & Associates, P.L.L.C.

### Management of the Debtor before and During the Bankruptcy

During the time period prior to the date on which the Debtor filed its bankruptcy petition, the Debtor managed his law business as a professional limited liability company. The Debtor proposes that he continue managing and operating his professional limited liability under the terms of the Plan of Reorganization. The Debtor intends to surrender the Reynolds Building and to retain only the Pepper Lane Building it owns in the ordinary course of business upon confirmation of the Plan. The Debtor intends to retain his residence and proposes a loan modification with the lender, Boulder Dam Credit Union.

### Events Leading to Chapter 11 Filing

The events leading to this chapter 11 case are the downturn in the economy generally and the Las Vegas real estate market specifically. Prior to the filing, the Debtor's commercial property known as the Reynolds Building, was and is the focus of a forthcoming and unavoidable foreclosure action from the first lien holder, Omaha Bank. In order to stop the foreclosure action and obtain an opportunity to reorganize, the Debtor filed for protection under Chapter 11. Indeed, property values have fallen so significantly that the Debtor can no longer sell or refinance its properties without the approval of its secured creditors. As a result, rather than walk away from the properties, the Debtor elected to file this case, preserve the Pepper Lane Building

and the personal residence,   and reorganize its debts in an effort to return ro profitability.

**Significant Events During the Bankruptcy Case**

The following is a list of the significant events which occurred during the Debtor's Chapter 11 case.  The subject  case is not complex, save the issues related to the Debtor's commercial lender, Omaha Bank.  Accordingly, the only material event in this case centers upon the Debtor's efforts to reorganize its secured debt so that the Debtor can return to profitability, which in turn will provide the cash flow necessary to fund the Plan.  Accordingly, a list of the significant events in the case follows.

The single most significant occurrence of the Debtor's case is its decision to surrender the Reynolds Building to Omaha Bank.  In addition, through the Plan, the Debtor proposes  to extend the term of its remaining commercial loans with Boulder Dam Credit Union, so that the Pepper Lane Building and the residence can be preserved.  With respect to the Debtor's secured personal property loan with Boulder Dam CU, the Debtor proposes that the same will be impaired because the loan terms will be modified and extended.   In this fashion, the Debtor will focus on its core commercial business, and abandon the unprofitable commercial properties,  allowing for a more streamlined reorganization.

The Debtor has not filed any adversary proceedings at this time, however, Debtor intends to commence an adversary action against a prior landlord who has asserted liability against the Debtor, where none legally exists.   Alternatively, the Debtor may remove the pending State civil action to this court and thereafter file a dispositive motion.   To date, the Debtor only petitioned the Court to retain two  professional in case, which is Owens & Pyper, P.L.C., as Debtor's counsel, and Paul M. Healy, CPA, the Debtor's accountant.

**Projected Recovery of Avoidable Transfers**

The Debtor does not intend to pursue preference, fraudulent conveyance, or other avoidance actions at this time. The Debtor does not believe any significant transfers occurred, other than to its secured creditors, during the 2 year period leading up to the filing of this case. Importantly, the majority of the Debtor's significant transfers were simply the payment of its mortgages.

The Debtor does reserve its right, however, to perform and complete an investigation with regard to prepetition transactions. Although it does not believe significant transfers occurred, creditors should be aware that if you received a payment or other transfer within 90 days of the bankruptcy, or other transfer avoidable under the Bankruptcy Code, the Debtor may seek to avoid such transfer.

### Claim Objections

Except to the extent that a claim is already allowed pursuant to a final non-appealable order, the Debtor reserves the right to object to creditors' claims. Therefore, even if your claim is allowed for voting purposes, you may not be entitled to a distribution if an objection to your claim is later upheld. The procedures for resolving disputed claims are set forth in Article V of the Plan.

Separately, the Court set a bar date for proofs of claim in the case of June 4, 2014, (the "**Bar Date**"). The Bar Date is the date after which creditors cannot file a proof of claim in this case. Importantly, if your claim is listed in the Debtor's Schedules of Liabilities, and you agree with the claim amount listed there, you do not need to file a proof of claim in the case. If the Debtor amends its Schedules of Liabilities and your claim is affected, you will have an opportunity to file an objection to any such change.

**Current and Historical Financial Conditions**

The identity and fair market value of the estate's assets are listed in **Exhibit B**.  The value of the assets is based on respective lender appraisals performed for each property.  As set forth above, the Debtor is abandoning all of its interest in the Reynolds Building  collateral. Accordingly, secured creditor Omaha Bank should move to protect its  rights in this  collateral. **If you are a secured creditor and intend to object to any revised valuation of your collateral based on a re-appraisal, you must file an objection to the Plan.**

**III.    SUMMARY OF THE PLAN OF REORGANIZATION AND TREATMENT OF CLAIMS AND EQUITY INTERESTS**

**What is the purpose of the plan of Reorganization?**

As required by the Bankruptcy Code, the Plan places claims in separate classes and describes the treatment each class will receive.  The Plan also states whether each class of claims is impaired or unimpaired.  If the Plan is confirmed, your recovery will be limited to the amount provided by the Plan.

**Unclassified Claims**

Certain types of claims are automatically entitled to specific treatment under the Code. They are not considered impaired, and holders of such claims do not vote on the Plan.  They may, however, object if, in such claim holder's view, the treatment under the Plan does not comply with that required by the Code.  As such, the Debtor did *not* place the following claims in any class:  None.

**Administrative Expenses**

Administrative expenses are costs or expenses of administrating the Debtor's Chapter 11

case which are allowed under section 507(a)(2) of the Bankruptcy Code. Administrative expenses also include the value of any goods or services sold to the Debtor in the ordinary course of business. The Bankruptcy Code requires that all administrative expenses be paid on the effective date of the Plan, unless a particular claimant agrees to a different treatment.

The following chart lists the Debtor's estimated admistrative expenses, and their proposed treatment under the Plan:

| TYPE | ESTIMATED AMOUNT OWED | PROPOSED TREATMENT |
|---|---|---|
| Expenses Arising From The Ordinary Course of Business After Petition Date | Current as of the date of filing of the Disclosure Statement | Paid in full on the effective date of the Plan, or according to terms of obligations, if later. |
| Professional Fees, as approved by the court. | $45,000 | Paid in full on the effective date of the Plan, or according to separate written agreement, or according to court order if such fees have not been approved by the Court on the effective date of the Plan. |
| | | |
| Clerk's Office Fees | $0.00 | Paid in full on the effective date of the Plan |
| Other administrative expenses | $0.00 | Paid in full on the effective date of the Plan, or according to separate written agreement. |
| Offices of the U.S. Trustee Fees | $0.00 | Paid in full on the effective date of the Plan. |
| TOTAL | $45,000 | |

Page 10

**Priority Tax Claims**

Priority tax claims are secured income, employment, and other taxes described by Section 507(a)(8) of the Bankruptcy Code.  Unless the holder of such a section 507(a)(8) priority tax claim agrees otherwise,  it must receive the present value of such claim, in regular installments paid over a period not exceeding 5 years from the order of relief.

**Classes of Claims**

The following are the classes set forth in the Plan, and the proposed treatment that they will receive under the Plan.

**Classes of Secured Claims**

Allowed Secured Claims are claims secured by property of the Debtor's bankruptcy estate (or that are subject to set off) to the extent as secured claims under Section 506 of the Bankruptcy Code.  If the value of the collateral or set offs securing the creditor's claim is less than the amount of the creditor's allowed claim the deficiency will be classified as a general, unsecured claim in Class 4.  The Debtor's first secured and unimpaired claim relates to its personal property loan with Boulder Dam CU and is catagorized as  Class 1, based upon this secured creditor's unique property rights.  Class 1 is the first of two categories involving secured creditors, this one is impaired as the loan terms will be modified and extended.   Class 2 of the Plan is comprised of the secured claims of Boulder Dam Credit Union  against the Debtor's Pepper Lane Building and the Debtor's residence.  Class 2 is impaired, as the Debtor proposes,  through the Plan, to extend the maturity of Boulder Dams Credit Union's  loans and modify the interest rate so that the Debtor can successfully manage its monthly income and  return to profitability and continue to operate and pay Plan payments, undisturbed.

The following chart lists the two classes containing the Debtor's secured prepetition claims and its proposed treatment of those claims under the Plan:

| Class # | Description | Impairment | Treatment |
|---------|-------------|------------|-----------|
| 1 | Secured Claims of on Debtor's Personal Property - (Vehicles) | Impaired | Paid according to the terms of the parties' loan as modified by the Plan that extends the term of the loan for thirty additional months. . |
| 2 | Secured Claims of Debtor's Commercial Building Property and Personal Residence Liens (Pepper Lane Building and Pama Residence) | Impaired | Paid according to the terms of the parties' loan as modified by the Plan that extends the terms of the loans and reducing the interest rate to five (5%) percent. |
|  |  |  |  |

**Priority Unsecured Claims - Class 3**

Class 3 shall include certain priority claims that are referred to in Sections 507(a)(1), (4), (5), (6), and (7) of the Bankruptcy Code. The Bankruptcy Code requires that each holder of such a claim receive cash on the effective date of the Plan equal to the allowed amount of such claim. A class of holders of such claims, however, may vote to accept different treatment. As of the date of this Disclosure Statement, the Debtor does not have any priority unsecured claims other that the tax claim of the Internal Revenue Service as documented by the filing of its recent Proof of Claim setting for a priority obligation of less than $1,000.00.

Page 12

**Classes of General Uunsecured Claims**

General unsecured claims are not secured by property of the estate and are not entitled to priority under Section 507(a) of the Bankruptcy Code.

The following chart identifies the Plan's proposed treatment of Class Number 4, which contains the general unsecured claims against the Debtor.

| Class# | Description | Impairment | Treatment |
|---|---|---|---|
| 4 | **General Unsecured Class, which includes the unsecured portion of the Debtor's secured lien holders** | **Impaired** | **Paid 5% on the individual allowed claim commencing on the Effective date of the Plan and continuing each quarter for five (5) years.** |
| | | | |
| | | | |

**Equity Interest of the Debtor**

Empty interest holders are parties who hold an ownership interest (i.e., equity interest) and are classified here in class 5. In a corporation, entities holding preferred or common stock are equity interest holders. In a partnership, equity interest holders include both general and limited partners. In a limited liability company, the equity interest holders are the members. Finally, with respect to an individual who is a debtor, the Debtor is the equity interest holder.

In this case, the Debtor is an individual as well as a professional limited liability company. The Debtor, as the sole managing member, will be retaining his equity interest, which will be unimpaired by the Plan. The Debtor is retaining his interest because the Debtor is paying contributing all of the actual and necessary funds from his disposable income over the next five

years to fund the Plan. Accordingly, the Plan does not violate the absolute priority rule.

The Debtor's membership interest will not be impaired and will not require registration under the Securities Act or any similar federal, state, or local law in reliance upon the exemptions set forth in section 1145 of the Bankruptcy Code.

### IV.    Means of Implementing the Plan

**Source of payments**

Payments and distributions under the Plan will be funded by the Debtor, based upon its projected available cash upon confirmation. The Debtor's Cash Flow Analysis is attached hereto as **Exhibit D** and outlines the Debtor's sources and uses of income. Indeed, the math is not complex, insomuch as the Plan payments described in this Disclosure Statement are based on the sum of rental income, disposible law office income , minus monthly mortgage payments and business expenses.

**Method of Plan Payments**

On or about the effective date of the Plan, the Debtor shall commencing paying its claims through quarterly installment payments amortized at the federal interest rate over five (5) years.

**Distributions on Account of Claims Allowed After the Effective Date**

Except as otherwise provided in the Plan, or upon the entry of a final, non-appealable order of the Bankruptcy Court, or as agreed to by the relevant parties, distributions under the Plan on account of a disputed claim that becomes an allowed claim after the effective date of the Plan shall be paid by the Debtor in the ordinary course, which is at least thirty (30) days after such claim becomes an allowed claim.

Notwithstanding anything in the Plan to the contrary, and except as otherwise agreed to

by the relevant parties, no partial payments and no partial distributions shall be made with respect to a disputed claim until all such disputes in connection with such disputed claim have been resolved by settlement among the parties or a final order of the court. In the event that there are disputed claims requiring adjudication and resolution, the Debtor shall establish appropriate reserves for potential payment of such Claims pursuant to Article VII.B2 of the Plan.

### Post-confirmation Management

The Debtor will manage the Pepper Lane Building and the law practice post-petition in the ordinary course. The Debtor will be authorized to enter into, terminate and renew lease agreements as it sees fit. Such activities will include retaining management companies to aid in the renting of its property, drafting and serving eviction notices, negotiating loan modifications or refinancing its properties, repairing the properties and maintaining a reserve account.

### Risk Factors

The risk related to the Debtor's Plan is the continued deterioration of the commercial rental market and/or a decline in the need for immigration legal services based upon and unannounced changed in Federal immigration law. Should the commercial rental market deteriorate in a manner which causes the Debtor's remaining property to become unaffordable, and the related mortgages could not be modified or refinanced to reflect the changed circumstances, the Debtor may become unable to make its Plan payments

### Executory Contracts and Unexpired Leases

The Plan, in **Exhibit E**, lists all executed contracts and unexpired leases the Debtor will assume under the Plan. Assumption means that the Debtor has elected to continue to perform the obligations under such contracts and unexpired leases, and to cure defaults of the type that must

be cured under the Code, if any. **Exhibit E** also lists how the Debtor will cure and compensate the other party to such contract or lease for any such defaults.

**If you object to the assumption of your unexpired lease or executive contract, the proposed cure of any defaults, or the adequacy of assurance of performance, you must file and serve your objection to the plan within the deadline for objecting to the confirmation of the Plan, unless the Court sets an earlier time.**

All executory contracts and unexpired leases that are not listed in Exhibit E will be rejected under the Plan. Consult your advisor or attorney for more specific information about particular contracts and leases.

If you object to the rejection of your contract or lease, you must file and serve your objection to the Plan within the deadline for objecting to the confirmation of the Plan.

**The deadline for filing a Proof of Claim Based on a Claim Arising from the Rejection of a Lease or Contract Is June 4, 2014.** Any claim based on the rejection of a contract or lease will be barred if the proof of claim is not timely filed, unless the Court orders otherwise.

### Tax Consequences of Plan

Creditors Concerned with How the Plan May Affect its Tax Liability Should Consult with its own Accountants, Attorneys, and/or Advisors.

The Debtor does not anticipate any adverse tax consequences to the estate from the Plan. To the extent the Debtor receives any debt forgiveness income related to this Chapter 11 case, such income would not be taxable under Section 108(a)(1) of the Internal Revenue Code, 26 U.S.C., 1. *Et seq.*

## V.    CONFIRMATION REQUIREMENTS AND PROCEDURES

To be confirmable, the plan must meet the requirements listed in Section 1129(a) or (b) of the Bankruptcy Code.  These include the requirements that: (i) the Plan must be proposed in good faith; (ii) at least one impaired class of claims must accept the plan, without counting votes of insiders; (iii) the Plan must distribute to each creditor and equity interest holder at least as much as the creditor or equity interest holder would receive in a Chapter 7 liquidation case, unless the creditor or equity interest holder votes to accept the Plan; and (iv) the Plan must be feasible.  These requirements are not the only requirements listed in Section 1129, and they are not the only requirements for confirmation.

### Who May Vote or Object

Any party-in-interest may object to the confirmation of the Plan if the party believes that the requirements for confirmation are not met.

Many parties-in-interest may object, however, are not entitled to vote to accept or reject the Plan.  A creditor equity interest holder has a right to vote for or against the Plan only if that creditor or equity interest holder has a claim or equity interest that is both (1) allowed (or allowed for voting purposes) and (2) impaired.

In this case, the Debtor believes that only class 2 is impaired and that holders of claims in this class are therefore entitled to vote to accept or reject the plan.  The Debtor believes that classes 1, 3, 4 and 5 are unimpaired and that holders of claims in each of these classes, therefore, are assumed to accept the Plan.

### What Is an Allowed Claim?

Only a creditor with an allowed claim has the right to vote on the Plan.  Generally, a

claim is allowed if either (A) the Debtor have scheduled the claim on the Debtor's schedules, unless the claim has been scheduled as disputed, contingent, or un-liquidated, or (B) the creditor has filed a proof of claim, unless an objection has been filed to such proof of claim by the Debtor, in which case, such creditor cannot vote unless the Court, after notice and hearing, either overrules the objection or allows the claim for voting purposes pursuant to Rule 3018(a) of the Federal Rules of Bankruptcy Procedure.

The deadline for filing a proof of claim in this case was **June 4, 2014.**

The deadline for filing objections to Confirmation is_____ , 2014.

**What Is an Impaired Claim?**

As noted above, the holder of an allowed claim or equity interest has the right to vote only if it is in a class that is *impaired* under the Plan.  As provided in Section 1124 of the Bankruptcy Code, a class is considered impaired if the Plan alters the legal, equitable, or contractual rights of the members of that class.

**Who is NOT Entitled to Vote?**

The holders of the following six types of claims are *not* entitled to vote:

- **Holders of claims that have been disallowed by an order of the Court;**

- **Holders of other claims that are not "allowed claims" (as discussed above), Unless they have been "allowed" for voting purposes;**

- **Holders of claims in unimpaired classes;**

- **Holders of claims entitled to priority pursuant to Section 507(1)(2), or (a)(8) of The Bankruptcy Code;**

- **Holders of claims in classes that do not receive or retain any value under the**

**plan; and**

- **Administrative expenses.**

Even if you are not entitled to vote on the Plan, you have the right to object to the confirmation of the Plan and to the adequacy of the Disclosure Statement.

### Who Can Vote In More Than One Class

A creditor whose claim has been allowed in part as a secured claim and in part as an unsecured claim, or who otherwise hold claims in multiple classes, is entitled to accept or reject a Plan in each capacity, and should cast one ballot for each claim.

### Votes necessary to confirm the Plan

If impaired classes exist the Court cannot confirm the Plan unless (A) at least one impaired class of creditors has accepted the Plan without counting the votes of any insiders within that class, or (B) all impaired classes have voted to accept the Plan, unless the Plan is eligible to be confirmed by "cram down" on non-accepting classes, as discussed below.

### Votes necessary for a class to Accept the Plan

A class of claims accepts the Plan if both of the following occur: (A) the holders of more than one-half (½) of the allowed claims in the class, who vote, cast his votes to accept the Plan, and (B) the holders of at least two thirds (2/3) in dollar amount of the allowed claims in the class, who vote, cast his votes to accept the Plan.

### Treatment of Non-Accepting Classes

Even if one or more of the impaired classes reject the Plan, the Court may nonetheless confirm the Plan if the non-accepting classes are treated in the manner prescribed by Section 1129(b) of the Bankruptcy Code.  A plan that binds non-accepting classes is commonly referred

to as a "cram down" plan.  The Code allows the Plan to bind non-accepting classes of claims or equity interests if it meets all the requirements for consensual confirmation except the voting requirements of Section 1129(a)(8) of the Bankruptcy Code, does not "discriminate unfairly," and is "fair and equitable" toward each impaired class that has not voted to accept the Plan.

**You should consult your own attorney regarding whether a "cramdown" confirmation will affect your claim, as the variations on this general rule are numerous and complex.**

### Liquidation Analysis

To confirm the Plan, the Court must find that all creditors who do not accept the Plan will receive at least as much under the Plan as such claim holders would receive in a Chapter 7 liquidation.  A liquidation analysis is attached to this Disclosure Statement as **Exhibit C.**

### Feasibility

The court must find that confirmation of the Plan is not likely to be followed by the liquidation, or need for further financial reorganization, of the Debtor or any successor to the Debtor, unless such liquidation or organization is proposed in the Plan.

### Ability to initially Fund the Plan

The Debtor believes that it will have either (A) enough cash on hand or (B) sufficient cash flow on the effective date of the Plan to pay all claims and expenses that are entitled to be paid on that date.  Tables showing the amount of cash on hand on the effective date of the Plan, and the sources of that cash are attached to this disclosure statement as **Exhibit D.**

### Ability to Make Future Plan Payments And Operate Without Further Reorganization

The Debtor must also show that it will have enough cash over the life of the Plan to make the required Plan Payments.

The Debtor's financial projections that the Debtor will have an aggregate amount of cash, after paying operating expenses and post-confirmation taxes, as set forth on **Exhibit D** of the Plan. The final Plan payment is expected to be paid on the fifth anniversary of the Effective Date.

**You should consult with your accountant or other financial advisor if you have any questions pertaining to these projections.**

## VI.    EFFECT OF CONFIRMATION PLAN

**Discharge of the Debtor**

Pursuant to section 1141© of the Bankruptcy Code, all claims that are not expressly provided for the preserved in the Plan shall be extinguished upon confirmation.   Upon Confirmation, the Debtors and all property dealt with in the Plan shall be free and clear of all such cliams and interests, including, without limitation, liens, security interests and any and all other encumbrances.

**Modification of Plan**

The Debtor may modify the Plan at any time before confirmation of the Plan.  The Court, however, may require a new Disclosure Statement and/or re-voting on the Plan.

The Debtor may also seek to modify the Plan at any time after confirmation only if (A) the Plan has not been substantially consummated and (B) the Court authorizes the proposed modifications after notice and a hearing.

Upon request of the Debtor, the Plan may be modified at any time after confirmation of the Plan, but before the completion of payments under the Plan, to (1) increase or reduce the

Page 21

amount of payments under the Plan on claims of a particular class, (2) extend or reduce the time period for such payments, or (3) alter the amount of distribution to a creditor whose claim is provided for by the Plan to the extent necessary to take on accounting of any payment of a claim made other than under the Plan.

Effective as of the date hereof and subject to the limitations and rights containied in the Plan: (a) the Debtor reserves the right, in accordance with the Bankruptcy Code and the Bankruptcy Rules, to amend or modify the Plan prior to the entry of the confirmation order, and (b) after the entry of the confirmation order, Debtor or the reorganized Debtor, as applicable, may, upon order of the Bankruptcy Code or remedy any defect or omission or reconcile any inconsistency in the Plan in such manner as may be necessary to carry out the purpose and intent of the Plan; provided, however, that any modification to the Plan shall not affect the rights or treatment of holders of General Unsecured Claims.

### Final Decree

Once the estate has been fully administered, as provided in Rule 3022 of the Federal Rules of bankruptcy Procedure, the Debtor, or such other party as the Court shall designate in the Plan confirmation order, shall file a motion with the Court to obtain a final decree to close the case.  Alternatively, the Court may enter such a final decree on its own motion.

### VII.    OTHER PLAN PROVISIONS

### Vesting of Assets in the Reorganized Debtor

After confirmation of the Plan, all property of the Debtor shall re-vest in the Debtor,  free and clear of all liens, claims, charges, or other encumbrances, except those enumerated in the the confirmation order.  The reorganized Debtor may operate its business and may use, acquire or

dispose of property and compromise or settle any claims without supervision or approval by the

Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, other

than those restrictions expressly imposed by the Plan and the confirmation order. Without

limiting the foregoing, the Debtor shall pay the charges that they incur after confirmation for

professionals' fees, disbursements, expenses or related support services (including reasonable

fees relating to the preparation of professional fee applications) without application to the

Bankruptcy Court.

### Release of Liens, Claims and Equity Interests

Except as otherwise provided herein or in any contract, instrument, release, or other

agreement or document entered into or delivered in connection with the Plan, upon confirmation,

all liens, claims, mortgages, deeds of trust, or other security interests against the property of the

Debtor's estate shall be fully released and discharged. The security interests of the Debtor's lien

holders however, shall be unimpaired under the Plan with respect to both the Debtor and its

property, including the unwinding of the relief granted through the Motion to Value.

### Compromise and Settlement

Notwithstanding anything contained in this Disclosure Statement to the contrary,

the allowance, classification and treatment of all Claims and their repective distributions and

treatments in the Plan, takes into account the relative priority and rights of the claims and the

equity interests in eachClass in connection with any contractual, legal and equitable

subordination rights relating to those claims, whether arising under general principles of

equitable subordination, section 510(b) and © of the Bankruptcy Code or otherwise, relating to

the allowance, classification and treatment of all allowed Claims and their respective

distributions and treatments in the Plan are settled, compromised, terminated and released.

**Third party Release**

NOTWITHSTANDING ANYTHING CONTAINED IN THE PLAN TO THE
CONTRARY, ON THE CONFIRMATION DATE OF THE PLAN AND EFFECTIVE AS OF
THE CONFIRMATION DATE, ALL MEMBERS AND MANAGERS OF THE DEBTOR
SHALL RECEIVE A FULL DISCHARGE AND RELEASE FROM ANY AND ALL CAUSES
OF ACTION, WHETHER KNOWN OR UNKNOWN, FORSEEN OR UNFORESEEN,
LIQUIDATED OR UNLIQUIDATED, CONTINGENT OR NON-CONTINGENT, EXISTING
AS OF THE EFFECTIVE DATE IN LAW, AT EQUITY, WHETHER FOR TORT, FRAUD,
CONTRACT OR OTHERWISE, ARISING FROM OR RELATED IN ANY WAY TO THE
DEBTOR, INCLUDING, WITHOUT LIMITATION, THOSE IN ANY WAY RELATED TO
THE CHAPTER 11 CASE OR THE PLAN; *PROVIDED, HOWEVER,* THAT THE
FOREGOING "THIRD PARTY RELEASE" SHALL NOT OPERATE TO WAIVE OR
RELEASE ANY CAUSES OF ACTION OF ANY RELEASING PARTY FROM ANY
CLAIMS ARISING FROM FRAUD, WILLFUL MISCONDUCT OR GROSS NEGLIGENCE.

ENTRY OF THE CONFIRMATION ORDER SHALL CONSTITUTE THE
BANKRUPTCY COURTS APPROVAL, PURSUANT TO BANKRUPTCY RULE 9019, OF
THE THIRD PARTY RELEASE, AND FURTHER, SHALL CONSTITUTE THE
BANKRUPTCY COURTS FINDING THAT THE THIRD PARTY RELEASE IS (1) IN THE
BEST INTERESTS OF THE DEBTOR AND ALL HOLDERS OF CLAIMS; (2) FAIR,
EQUITABLE AND REASONABLE; (3) GIVEN AND MADE AFTER DUE NOTICE AND
OPPORTUNITY FOR HEARING; AND (4) A BAR TO ANY OF THE DEBTOR'S

CREDITORS FROM ASSERTING ANY CLAIM AGAINST THE DEBTOR'S MEMBERS OR
MANAGERS AND PAID THROUGH THE PLAN.

**Exculpation**

The Debtor's member and manager shall neither have, nor incur any liability to any entity
for any prepetition or postpetition act taken or omitted to be taken in connection with, or related
to formulating, negotiating, preparing, disseminating, implementing, administering, confirming
or effecting the consummation of the Plan, the Disclosure Statement or any contract, instrument,
release or other agreement or document created or entered into in connection with the Plan or any
other prepetition or postpetition act taken or omitted to be taken in connection with or in
contemplation of the restructuring of the Debtor; *provided, however*, that the foregoing
"exculpation" shall have no effect on the liability of any entity that results from any such act or
omission that is determined in a final order to have constituted gross negligence or willful
misconduct; *provided, further*, that each party exculpated pursuant to Article V of the Plan shall
be entitled to rely upon the advice of counsel concerning his, her or its duties pursuant to, or in
connection with, the Plan; *provided, still further*, that the foregoing exculpation shall not apply to
any acts or omissions expressly set forth in an preserved by the Plan or its related documents.

**Certificate of Incorporation and Bylaws**

The articles of organization and bylaws (or other formation documents) of the Debtor
shall be amended as may be required to be consistent with the provisions of the Plan and the
Bankruptcy Code or as otherwise required by, and in a form reasonably acceptable to, the Debtor.
On or as soon as reasonably practicable after the confirmation of the Plan, the organized Debtor
shall file a new certificate of organization with the Nevada secretary of state, as required by

section 1123(a)(6) of the Bankruptcy Code.

**Effectuating Documents; Further Transactions;**
**Exemption from Certain Transfer Taxes**

The Debtor may take all actions to execute, deliver, file or record such contracts, instruments, releases and other agreements or documents and take such actions as any be necessary or appropriate to effectuate and implement the provisions of the Plan.

Pursuant to section 1146(a) of the Bankruptcy Code, any transfers of property pursuant to the Plan shall not be subject to any stamp tax or other similar tax or governmental assessment in the United States, and the confirmation order shall direct the appropriate state or local governmental officials or agents to forgo the collection of any such tax or governmental assessment and to accept for filing and recordation instruments or other documents pursuant to such transfers of property without the payment of any such tax or governmental assessment.

**Revocation of Plan**

The Debtor reserves the right to revoke or withdraw the Plan prior to the confirmation hearing and to the file subsequent Chapter 11 plans. If the Debtor revokes or withdraws the Plan, or if confirmation does not occur, then: (1) the Plan shall be null and void in all respects; (2) any settlement or compromise embodied in the Plan, assumption or rejection of Executory Contracts or Unexpired Leases effected by the Plan and any document or agreement executed pursuant hereto shall be deemed null and void except as may be set forth in a separate order entered by the Court; and (3) nothing contained in the Plan shall: (a) constitute a waiver or release of any Claims by or against, the Debtor or any other entity; (b) prejudice in any manner the rights of the Debtor or any other entity; or (c) constitute an admission, acknowledgement, offer or undertaking of any sort by the Debtor or any other entity.

Page 26

**Successors and Assigns**

The rights, benefits and obligations of any entity named or referred to herein shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such entity.

**Reservation of Rights**

Except as expressly set forth in the Plan, the Plan shall have no force until the Court enters the confirmation order. Neither the filing of the Plan, any statement or provision contained in the Disclosure Statement, nor the taking of any action by the Debtor or any other entity with respect to the Plan shall be or shall be deemed to be an admission or waiver of any rights of: (1) and Debtor with respect to the holders of claims or other entity; or (2) any holder of a Claim or other prior to the effective date of the Plan.

**Further Assurances**

The Debtor or the reorganized Debtor, as applicable, all holders of Claims receiving distributions under the Plan and all other entities shall, from time to time, prepare, execute and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan or the confirmation order.

**Severability**

If, prior to confirmation of the Plan, any term or provision of the Plan is held by the Court to be invalid, void or unenforceable, the Court shall have the power to alter and interpret such term or provision to make it valid or enforceable, the Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void

or unenforceable, and such term or provision then will be applicable as altered or interpreted, *provided* that any such alteration or interpretation must be in form and substance reasonably acceptable to the Debtor, and, to the extent such alteration or interpretation affects the rights or treatment of holders of general unsecured claims, such claim holder.

### Return of Security Deposits

Unless the Debtor agrees otherwise in a written agreement or stipulation approved by the Court, all security deposits provided by the Debtor to any person or entity at any time after the petition date shall be returned to the Debtor within twenty (20) days after the date of confirmation, without deduction or offset of any kind.

### Filing of Additional Documents

On or before the Effective Date, the Debtor may file with the Court all agreements and other documents that may be necessary or appropriate to effectuate and further evidence the terms and conditions hereof.

**REZA ATHARI**

/s/  Reza Athari
_____
**Debtor-in-Possession**

**FATANEH ATHARI**

/s/ Fataneh Athari
_____
**Debtor-in-Possession**

**REZA ATHARI & ASSOCIATES, P.L.L.C.**

/s/ Reza Athari
_____
**Reza Athari, Manager**

# EXHIBITS

**Exhibit A – Copy of Proposed Plan of Reorganization**

**Exhibit B -List of Properties**

**Exhibit C-Liquidation Analysis**

**Exhibit D-Cash Flow Analysis**

**Exhibit E-List of Executory Contract**

# EXHIBIT A

OWENS & PYPER, P.L.C.
3030 N. Central Avenue, Ste. 1406
Phoenix, Arizona 85012
Phone: 602-265-4800
Fax: 602-265-0005
Mark B. Pyper, (#011051 AZ)
Email: pyperlaw@aol.com

Proposed Attorneys for Debtors-in-Possession

## IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| In re: | Chapter 11 |
| REZA ATHARI & FATANEH ATHARI, | Case No. 2:14-bk-10723 |
| Debtors. | DEBTOR'S  CHAPTER 11 PLAN OF REORGANIZATION |
| In re: | Chapter 11 |
| REZA ATHARI & ASSOCIATES, P.L.L.C | Case No.  2:14-bk-10724 |
| Debtor. | |

Debtors-in-possession  Reza Athari and Fataneh Athari as well as debtor-in-possession Reza Athari & Associates, P.L.L.C., ( hereafter collectively referred to as  "Debtor,") hereby submits their proposed "Plan of Reorganization," arising from and related to the above-captioned bankruptcy case.


## PLAN OF REORGANIZATION OF REZA ATHARI,

## FATANEH ATHARI & REZA ATHARI & ASSOCIATES, P.L.L.C.

## ARTICLE I - SUMMARY

This Plan of Reorganization (the "**Plan**") under Chapter 11 of the United States Bankruptcy Code, 11 U.S.C. section 101, *et seq*. (The "**Bankruptcy Code**") proposes to pay creditors of the Debtor from the reorganization of its commercial income property as well as from income generated from a law practice.

This Plan provides for 2 classes of secured claims, 2 classes of unsecured claims and 1 class of equity security claims. Unsecured creditors holding allowed claims will receive a distribution of 100% of their allowed claims. This Plan also provides for the payment of administrative or priority claims in full on the effective date of this Plan, or as agreed by the holder of such administrative or priorty claim.

All creditors should refer to Articles 11 through IV of this Plan for information regarding the precise treatment of their claims. A Disclosure Statement (the "**Disclosure Statement**") that provides more detailed information regarding this Plan and the rights of creditors was circulated with this Plan. If you do not have an attorney, you may wish to consult one.

## ARTICLE 11 - CLASSIFICATION AND TREATMENT OF CLAIMS

This Plan constitutes the Chapter 11 plan of reorganization of the Debtor. All Claims against the Debtor are placed in classes (each a "**Class**") as designated by Classes 1 through 5. In accordance with section 1123(a)(1) of the Bankruptcy Code, the Debtor has not classified Administrative Claims and Priority Tax Claims.

The categories of claims (as defined in the Bankruptcy Code, listed below classify Claims for all purposes, including, without limitation, voting, confirmation and distribution pursuant to this Plan sections 1122 and 1123(a)(1) of the Bankruptcy Code. The Plan deems a Claim to be classified in a particular Class only to the extent that the Claim qualifies within the description of that Class [and shall be deemed classified in a different Class to the extend that any remainder of such Claim qualified withing the description of such different Class] and shall be deemed classified in a different Class. A Claim is in a particular Class only to the extent that any such Claim is allowed in that Class and has not been paid or otherwise settled prior to the effective date of the Plan as determined in paragraph 6.02 below.

**Classification of Claims**

1.01        Class 1 -Secured Personal Property Claim of Boulder Dam CU

        (a)      *Classification*: Class 1(a) consists of the Secured Personal Property Claim of Boulder Dam CU against the Debtor's vehicles located at 3365 Pepper Lane, Ste. 102, L Las Vegas, Nevada, which is secured by a lien against the same, loan number 27843009-A9

        (b)      *Treatment:* The holder of the allowed Class 1(a) Secured Claim shall be impaired as the Debtor proposes extending the loan term an additional thrity (30) months, but otherwise paying this account in full according to the terms of the existing loan .

        (c)      *Voting:* Class 1(a) is impaired class, and the holder of the Class1(a) Claim is  entitled to vote to accept or reject the Plan.

Class  2(a) - Secured Claim of Boulder Dam CU - Pama Residence

     (a)    Classification: Class 1(c) consists of the Secured Claim of Boulder Dam CU against the Debtor's Pama Residence in Las Vegas, Nevada, which is secured by a lien against the Debtor's residential property, loan number 27843009--3.

     (b)    Treatment: The holder of the allowed Class 1(f) Secured Claim shall be impaired as the Debtor proposes to extend and reamortize  the existing loan over twenty (20) years and reduce the effective interest rate to five (5%) per cent, but otherwise‖ paid its according to its terms.

     (c)    *Voting*: Class 1(c) is an impaired class, and the holder of the class 1(i) claim is  entitled to vote to accept or reject the Plan.

1.02    Class 2(b)- Secured Claim of Boulder Damn CU - Pepper Lane Building

     (a)    *Classification*: Class  1(b) consists of the Secured Claim of Boulder Dam CU Mortgage against the Debtor's commercial property located at 3365 Pepper Lane, Las Vegas, Nevada,  which is secured by a lien against the the same real property,  loan number 27843009-1.

     (b)    *Treatment:* The holder of the allowed Class 1(b) Secured Claim shall be Impaired as the loan will be modified and extended to be amortized over twenty ( 20) years at a reduced interest rate of 5% but otherwise  paid according to its terms.

(c)     *Voting:* Class1(b) is an impaired class, and the holder of the Class1(b) Claim is entitled to vote to accept or reject the Plan.

Class 2(c) - Secured Claim of Omaha Bank

(a)     *Classification:* Class 2(c) consists of the Secured Claim of Omaha Bank which is secured by the Reynolds Building in North Las Vegas, Nevada. which is secured by a lien against the Debtor's residential property, loan number 001320147002.

(b)     *Treatment:*  The holder of the allowed Class 2(c) Secured Claim is impaired and its collateral shall be surrendered to Omaha Bank upon the Effective Date or at any other earlier time at the request of Omaha Bank.   Based upon the foregoing treatment, Omaha Bank will be treated as an unsecured creditor and its voting rights will be consistent with the treatment of General Unsecured Creditors Class 4.

(c)     *Voting:* Class 2(c) is impaired class, and the holder of the Class 4(c) and will vote with the other similarly situated claims of General Unsecured Claims of Class 4.

2.01     Class 3 - Priority Claims

(a)     *Classification:* Class 3 consists of the Priority Claims against the Debtors.

(b)     Treatment: The legal equitable and contractual rights of the holders of allowed Class 3 Claims are unaltered.  Except to the extent that a holder of

an allowed Class 3 claim has been paid by the Debtors prior to the effective date of this Plan or otherwise agrees to different treatment, each holder of an allowed Class 3 Claim shall receive, in full and final satisfaction of such allowed Class 3 Claim, payment in full and final satisfaction of such allowed Class 3 claim, payment in full in cash on or as soon as reasonable practicable after (i) the effective date of the Plan, (ii) the date such allowed Class 3 claim becomes allowed or (iii) such other date as may be ordered by the Bankruptcy Court.

(c)   Voting: Class 3 is an unimpaired Class, and is deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, the holders of Class 3 claims are not entitled to vote to accept or reject the Plan.

2.02   Class 4 - General Unsecured Claims

(a)   *Classification:* Class 4 consists of General Unsecured Claims against the Debtor.

(b)   *Treatment:* The legal, equitable and contractual rights of the holders of Class 4 Claims are impaired and will be paid an amount equal to five (5%) of their approved and allowed claim over five (5) years payable quarterly with interest thereon at the Federal rate until paid in full.

(c)   Voting: Class 4 is an impaired Class and holder of the Class 4 claim is an impaired class, and the holder of the Class1(b) Claim is entitled to vote to accept or reject the Plan.

2.03        Class 5 - Equity

(a)    *Classification:* Class 5 consists of Equity Claims against the Debtor, which includes only the claims of Reza Athari, Fataneh Athari and Reza Athari & Associates, P.L.L.C.

(b)    *Treatment:* Because the holder the Class 4 Equity Claim has agreed to pay the reduced and impaired claims of holder of the Class 1 claim as well as the impaired claims of Class 5, the Equity Claims is impaired.

(c)    *Voting:* Class 5 is an impaired class, and the holder of the Class 5 Equity Claim is conclusively deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, the holder of the Class 5 Equity Claim is not entitled to vote to accept or reject the Plan.

## ARTICLE III

## TREATMENT OF ADMINISTRATIVE EXPENSE CLAIMS.

## U.S. TRUSTEES FEES AND PRIORITY TAX CLAIMS

3.01  Unclassified Claims. In accordance with section 1123(a)(1) of the Bankruptcy Code, administrative expense claims, and priority tax claims are not in classes.

3.02    Administrative Expense Claims, Each holder of an administrative expense claim allowed under Section 503 of the Bankruptcy Code will be paid in full on the effective date of this Plan, in cash, or upon such other terms as may be agreed upon by the holder of the claim and the Debtor. Unless they are authorized by the Court or the Debtor, professionals shall file and serve their final fee applications no later than 45 days after the entry of the order confirming the Plan.

3.03    <u>Priority Tax Claims.</u>  Each holder of a priority tax claim will be paid in full on the effective date of the Plan, or with respect to the Internal Revenue Service, as agreed upon among the parties.  To the extent any allowed priority tax claims are not due or owing upon confirmation, such claims shall be paid as applicable under non-bankruptcy law, or in the ordinary course of business.

3.04    <u>United States Trustee Fees.</u>  All fees required to be paid 28 U.S.C. § 1930 will accrue and be timely paid until the case is closed, dismissed, or converted to another chapter of the Code. Any U.S. Trustee Fees owed on or before the effective date of this Plan will be paid on the effective date.

## ARTICLE IV

### PROVISIONS FOR EXECUTORY CONTRACTS AND UNEXPIRED LEASES

4.01    <u>Assumed Executory Contracts and Unexpired Leases</u>

(a)  The Debtor shall assume, on the effective date of this Plan, the executory contracts and unexpired leases listed on **Exhibit 1** attached hereto ( with the exception of Resort Holdings 3, L.L.C. which will not be affirmed as it is being rejected as disputed.)  Listed on **Exhibit 1** is also the Debtor's estimated cure amount, if any, necessary to assume such contract in accordance with Section 365 of the Bankruptcy Code.

(b)  With respect to any property relating to any and all executory contracts and/or unexpired leases assumed hereunder, the Debtor expressly reserves the right to sell such property in accordance with Section 363 of the Bankruptcy Code or to abandon and/or execute a deed in lieu of foreclosure for such property in accordance with Section 554 of the Bankruptcy Code.

(c)  The Debtor will be conclusively deemed to have rejected all executory contracts and/or

Page 37

expired leases not expressly assumed under section 4.01(a) above. A proof of a claim arising from the rejection of an executory contract or unexpired lease under the section must be filed no later than thirty (30) days after the date of the order confirming this Plan.

(d) The confirmation order shall constitute an order of the Bankruptcy Court approving such assumptions pursuant to section 365 and 1123 of the Bankruptcy Code as of the effective date of this Plan. The Debtor reserves the right to amend **Exhibit 1** at any time before the effective date.

(e) Any objection by a party to an executory contract or unexpired lease to the Debtor's proposed assumption or any related cure amount set forth on Exhibit 2 must be filed, served and actually received by the Debtor at least five (5) days prior to the confirmation hearing of this Plan. Any party to an executory contract or unexpired lease that fails to object timely to the proposed cure amount will be deemed to have consented to such assignment of its executory contract or unexpired lease. The confirmation order shall constitute an order of the Bankruptcy Court approving any proposed assignments of excutory contracts or unexpired leases pursuant to sections 365 and 1123 of the Bankruptcy Code as of the Effective Date.

(f) In the event of a dispute regarding (i) the amount of any cure payment, (ii) the ability of the Debtor to provide "adequate" assurance of future performances" (within the meaning of section 365 of the Bankruptcy Code under the executory contract or unexpired lease to be assigned or (iii) any other matter pertaining to assignment, the applicable cure payments required by section 365(b)(1) of the Bankruptcy Court, the Debtor at its sole option, may elect to reject such excutory contractor unexpired contract or unexpired lease in lieu of assuming and assigning it.

## ARTICLE V

## SETTLEMENT, RELEASE, INJUCTION AND RELATED PROVISIONS

5.01    Compromise and Settlement

Notwithstanding anything contained herein to the contrary, the allowance, classification and treatment of all Claims and their respective distributions and treatments hereunder, takes into account the relative priority and rights of the claims and the equity interests in each Class in connection with any contractual, legal and equitable subordination rights relating thereto whether arising under general principles of equitable subordination, section 510(b) and (c) of the Bankruptcy Code or otherwise. Pursuant to the Debtor's either payment in full of claims or the surrendering of the collateral related thereto contained in the Plan, as of the effective date of the Plan, any and all contractual, legal and equitable subordination rights, whether arising under general principles of equitable subordination, section 510(b) and (c) of the Bankruptcy Code and their respective distributions and tratments hereunder are settled, compromised, terminated and released pursuant hereto.

5.02    Third Party Release

NOTWITHSTANDING ANYTHING CONTAINED HEREIN TO THE CONTRARY, ON THE CONFIRMATION DATE OF THE PLAN AND EFFECTIVE AS OF THE CONFIRMATION DATE, ALL MEMBERS AND MANAGERS OF THE DEBTOR SHALL RECEIVE A FULL DISCHARGE AND RELEASE FROM ANY AND ALL CAUSES OF ACTION, WHETHER KNOW OR UNKNOWN, FORESEEN OR UNFORSEEN, LIQUIDATED OR UNLIQUIDATED, CONTINGENT OR NON-CONTINGENT, EXISTING AS OF THE EFFECTIVE DATE IN LAW,

Page 39

AT EQUITY, WHETHER FOR TORT, FRAUD, CONTRACT OR OTHERWISE, ARISING FROM OR RELATED IN ANY WAY TO THE DEBTOR, INCLUDING, WITHOUT LIMITATION, THOSE IN ANY WAY RELATED TO THE CHAPTER 11 CASE OR THE PLAN; *PROVIDED, HOWEVER,* THAT THE FOREGOING "THIRD PARTY RELEASE" SHALL NOT OPERATE TO WAIVE OR RELEASE ANY CAUSES OF ACTIONS OF ANY RELEASING PARTY FROM ANY CLAIMS ARISING FROM FRAUD, WILLFUL MISCONDUCT OR GROSS NEGLIGENCE.

ENTRY OF THE CONFIRMATION ORDER SHALL CONSTITUTE THE BANKRUPTCY COURTS APPROVAL, PURSUANT TO BANKRUPTCY RULE 9019, OF THE THIRD PARTY RELEASE, AND FURTHER, SHALL CONSTITUTE THE BANKRUPTCY COURTS FINDING THAT THE THIRD PARTY RELEASE IS (1) IN THE BEST INTERESTS OF THE DEBTORS AND ALL HOLDERS OF CLAIMS: (2) FAIR, EQUITABLE AND REASONABLE; (3) GIVEN AND MADE AFTER DUE NOTICE AND CREDITORS FROM ASSERTING ANY CLAIM AGAINST THE DEBTOR'S MEMBERS OR MANAGERS AND PAID THROUGH THE PLAN.

5.04   Exculpation.

The Debtor's member and manager shall neither have, nor incur any liability to any entity for any prepetition or postpetition act taken or omitted to be taken in connection with, or related to formulating, negotiating, preparing, disseminating, implementing, administering, confirming or effecting the consummation of the Plan, the Disclosure Statement or any contract, instrument, release or other agreement or document created or entered into in connection with the Plan or any other

prepetition or postpetition act taken or omitted to be taken in connection with or in contemplation of the restructuring of the Debtor; *provided, however,* that the foregoing "exculpation" shall have no effect on the liability of any entity that results from any such act or omission that is determined in a final order to have constituted gross negligence or willful misconduct; *provided, further,* that each party exculpated pursuant to Article V of the Plan shall be entitled to rely upon the advice of counsel concerning his, her or its duties pursuant to, or in connection with, the Plan; *provided, still further,* that the foregoing exculpation shall not apply to any acts or omissions expressly set forth in and preserved by the Plan or its related documents.

## ARTICLE VI - MEANS FOR IMPLEMENTATION OF THE PLAN

6.01    <u>Source of Payments.</u> Payments and distributions under the Plan will be funded by the Debtor, based upon its projected monthly rental and law firm income. The Liquidation Analysis attached the Disclosure Statement as **Exhibit C**, outlines the Debtor's sources and uses of income.

6.02    <u>Method of Plan Payments</u>

(a)    On or about the effective date of the Plan, the Debtor commence paying the claims of its creditors in the ordinary course.  Except as otherwise provided in the Plan, upon the first full month after the entry of the order confirming the Plan, the Debtor shall begin making distribtions in accordance with the Plan. To the extent applicable, the Debtor  shall begin, as soon as practical, making pro rata payments to the Debtor's unsecured creditors holding allowed claims, on a quarterly basis, until such claims are paid as set forth in the Plan.

(b)    Except as otherwise provided in the Plan, or upon the entry of a final, non-appealable order of the Bankruptcy Court, or as agreed to by the relevant parties, distributions under the Plan

on account of a disputed claim that becomes an allowed claim after the effective date of the Plan shall be paid in the ordinary course, as established by the Debtor, but no less than thirty (30) days after such claim becomes an allowed claim.

(c)    Notwithstanding anything in the Plan to the contrary, and except as otherwise agreed to by the relevant parties, no partial payments and no partial distributions shall be made with respect to a disputed claim until all such disputes in connection with such disputed claim have been resolved by settlement among the parties or a final order of the Bankruptcy Court. In the event that there are disputed claims requiring adjudication and resolution, the Debtor, as applicable, shall establish appropriate reserves for potential payment of such Claims. Notwithstanding anything herein to the contrary, the Debtor shall not be required to make distribution or payments of less than $10 and shall not be required to make partial distributions or payments of fractions of dollars. Whenever any payment or distribution of a fraction of a dollar under the Plan would otherwise be called for, the actual payment or distribution will reflect a rounding of such fraction to the nearest whole dollar (up or down), with half dollars or less being rounded down.

(d)    The Debtor shall be authorized to retain attorneys, if necessary, to object to proofs of claim, pay administrative expenses and collect a reasonable fee for administering the Debtor's post-confirmation estate from the debtor's plan payments.

6.03    Post Confirmation Management.  The Debtor will continue to exist after confirmation of the Plan as a separate limited liability company, with all the powers of a limited liability company pursuant to Nevada law and pursuant to the Debtor's formation documents in effect prior to confirmation, except to the extent such formation documents are amended by or in connection with this Plan. Any such amendments are deemed to be authorized pursuant hereto and

without the need for any other approvals, authorizations, actions or consents.

ARTICLE VII

GENERAL PROVISIONS

7.01    <u>Definitions and Rules of Construction</u>.  The definitions and rules of construction set forth in Sections 101 and 102 of the Bankruptcy code shall apply when terms defined or construed in the Bankruptcy Code are used in this Plan.

7.02    <u>Effective Date of Plan</u>.  The effective date of this Plan is the eleventh business day following the date of the entry of the confirmation order.  But if a stay of the confirmation order is in effect on that date, the effective date will be the first business day after that date on which no stay of the confirmation order is in effect, provided that the confirmation order has not been vacated.

7.03    <u>Modification of Plan</u>.

The Debtor may modify the Plan at any time before confirmation of the Plan.  The Court, however, may require a new Disclosure Statement and/or re-voting on the Plan.  The Debtor may also seek to modify the Plan at any time after confirmation only if (A) the Plan has not been substaintially consummated and (B) the Court authorizes the proposed modifications after notice and a hearing.

Upon request of the Debtor, the Plan may be modified at any time after confirmation of the Plan, but before the completion of payments under the Plan, to (1) increase or reduce the amount of payments under the the Plan on claims ofa particular class, (2) extend or reduce the time period for such payments, or (3) alter the amount of distribution to a creditor whose claim is provided for by the Pan to the extend necessary to take on accounting of any payment of a claim made other than

Page 43

under the Plan.

Effective as of the date hereof and subject to the limitations and rights contained in the Plan: (a) the Debtor reserves the right, in accordance with the Bankruptcy Code and the Bankruptcy Rules, to amend or modify the Plan prior to the entry of the confirmation order; and (b) after the entry of the confirmation order, the Debtor may, upon order of the Bankruptcy Court, amend or modify the Plan, in accordance with section 1127(b) of the Bankruptcy code or remedy any defect or omission or reconcile any inconsistency in the Plan in such manner as may be necessary to carry out the purpose and intent of the Plan; provided, however, that any modification to the Plan shall not affect the rights or treatment of holders of unsecured claims.

7.04    Final Decree.  Once the estate has been fully administered, as provided in Rule 3022 of the Federal Rules of Bankruptcy Procedure, the Debtor, or such other party as the Court shall designate in the Plan confirmation order, shall file a motion with the Court to obtain a final decree to close the case.  Alternatively, the Court may enter such a final decree on its own motion.

7.05    Vesting of Assets in the Reorganized Debtor.  After confirmation of the Plan, all property of the Debtor shall vest in the reorganized Debtor, free and clear of all liens, claims, charges or other encumbrances, except those enumerated in the order approving the Motion to Value and the confirmation order.  The reorganized Debtor may operate its business and may use, acquire or dispose of property and compromise or settle any claims without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy code or Bankruptcy Rules, other than those restrictions expressly imposed by the Plan and the confirmation order.  Without limiting the foregoing, the Debtor shall pay the charges that it incurs after confirmation for professionals' fees, disbursements, expenses or related support services (including reasonable fees relating to the

preparation of professional fee applications) without application to the Bankruptcy Court.

7.06    Release of Liens, Claims and Equity Interests. Except as otherwise provided herein or in the following sentence or in any contract, instrument, release or other agreement or document entered into or delivered in connection withe the Plan, upon confirmation, all liens, claims, mortgages, deeds of trust, or other security interests against the property of the Debtor's estate shall be fully released and discharged. The existing liens and lien rights of those lenders holding claims in Class 1 are expressly preserved under the Plan, and their existing liens shall ride through and remain attached to any and all underlying collateral in any transfer of property expressly set forth in, or contemplated by, the Plan. To the extent any provision in this Plan or the confirmation Order can be read to contradict the express preservation of lien rights in this provision, this provision controls.

7.07    Certificate of Incorporation and Bylaws. The articles of organization and bylaws (or other formation documents) of the new entity shall be amended as may be required to be consistent with the provisions of the Plan and the Bankruptcy Code or as otherwise required by, and in a form reasonably acceptable to, the Debtor. On or as soon as reasonably practicable after confirmation of the Plan, the reorganized Debtor shall file a new certification of organization with the Nevada secretary of state, as required by section 1123(a)(6) of the Bankruptcy Code.

7.08    Effectuating Documents; Further Transactions. The Debtor may take all actions to execute, deliver, file or record such contracts, instruments, releases and other agreements or documents and take such actions as may be necessary or appropriate to effectuate and implement the provisions of the Plan.

7.09    Exemption from Certain Transfer Taxes. Pursuant to section 1146(a) of the Bankruptcy Code, any transfers of property pursuant to the Plan shall not be subject to any stamp tax

or other similar tax or governmental assessment in the United States, and the confirmation order shall direct the appropriate state of local governmental officials or agents to forgo the collection of any such tax or governmental assessment and to accept for filing and recordation instruments or other documents pursuant to such transfers of property without the payment of any such tax or governmental assessment.

      7.10    Revocation of Plan. The Debtor reserves the right to revoke or withdraw the Plan prior to the confirmation hearing and to file subsequent Chapter 11 plans. If the Debtor revokes or withdraw the Plan, or if confirmation does not occur, then: (1) the Plan shall be null and void in all respects; (2) any settlement or compromise embodied in the Plan, assumption or rejection of Executory Contracts or Unexpired Leases effected by the Plan and any document or agreement executed pursuant hereto shall be deemed null and void except as may be set forth in a separate order entered by the Court; and (3) nothing contained in the Plan shall: (a) constitute a waiver or release of any Claims by or against, the Debtor or any other entity; (b) prejudice in any manner the rights of the Debtor or any other entity; or (c) consititute an admission, acknowledgement, offer or undertaking of any sort by the Debtor or any other entity.

      7.11    Successors and Assigns. The rights, benefits and obligations of any entity named or referred to herein shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such entity.

      7.12    Reservation of Rights. Except as expressly set forth herein, the Plan shall have no force or effect until the Court enters the confirmation order. Neither the filing of the Plan, any statement or provision contained in the Disclosure Statement, nor the taking of any action by a Debtor or any other entity with respect to the Plan shall be or shall be deemed to be an admission or

waiver of any rights of: (1) the Debtor with respect to the holders of claims or other entity; or (2) any holder of a Claim or other entity prior to the effective date of the Plan.

7.13    Further Assurances.  The Debtor or the reorganized Debtor, as applicable, all holders of Claims receiving distributions under the Plan and all other entities shall, from time to time, prepare, execute and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan or the confirmation order.

7.14    Severability. If, prior to confirmation of the Plan, any term or provision of the Plan is held by the Court to be invalid, void or unenforceable, the Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invlaid, void or unenforceable, and such term or provision then will be applicable as altered or interpreted, *provided* that any such alteration or interpretation must be in form and substance reasonably acceptable to the Debtor, and, to the extent such alteration or interpretation affects the rights or treatment of holders of unsecured claims, such claim holder.

7.15    Return of Security Deposits.  Unless the Debtor agrees otherwise in a written agreement or stipulation approved by the court, all security deposits provided by the Debtor to any person or entity at any time after the petition date shall be returned to the Debtor within twenty (20) days after the date of confirmation, without deduction or offset of any kind.

7.16    Filing of Additional Documents.  On or before the Effective Date, the Debtor may file with the Court all agreements and other documents that may be necessary or appropriate to effectuate and further evidence the terms and conditions hereof.

7.17    Captions. The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

ARTICLE VIII
DISCHARGE

8.01 **Discharge.** Pursuant to section 1141(c) of the Bankruptcy Code, confirmation of this Plan all claims that are not expressly provided for and preserved herein shall be extinguished upon confirmation. Upon confirmation, the Debtor and all property dealt with herein shall be free and clear of all such claims and interests, including, without limitation, liens, security interests and any and all other encumbrances.

Dated: _____

**REZA ATHARI**


_____

**Debtor-in-Possession**


**FATANEH ATHARI**


_____

**Debtor-in-Possession**

**REZA    ATHARI    &    ASSOCIATES, P.L.L.C.**


_____

**Reza Athari, Manager**
**Debtor-in-Possession**

# EXHIBIT B

## LIST OF PROPERTIES

1.      Reynolds Building

2.      Pepper Lane Building

3.      Debtor Residence

# EXHIBIT C

## LIQUIDATION ANALYSIS

    1.0    **Liquidation Analysis**.  The following chart sets forth the assets of debtors Reza Athari, Fataneh Athari and Reza Athari & Associates, P.L.L.C.   At the current time,  but for exempt assets, all of the assets are effectively secured by third party loans and security agreements. If the debtors were to convert to a Chapter 7 bankruptcy, all of the secured creditors would be paid less than the amount that they are otherwise owed due to the fact that trustee's sale prices and auction prices will return an amount to each that is well below the amount of value offered to the respective secured creditor under the debtors' Plan of Reorganization.  Under a liquidation scenario,  the debtors would have their vehicles repossessed with a deficiency likely owing, the Pepper Lane building and Pama residence would be foreclosed and sold at a trustee's sale with a sizable deficiency owed and the Reynolds building would be sold at a trustee's sale with a seven figure deficiency claim resulting.  Under the debtor's plan, the BDCU creditors fares well as it is paid back is loan amount at a slightly lower interest rate stretched out over additional time.  The Omaha lender likewise will receive more under the debtor's plan in the amount of 5% of its ultimate deficiency claim, post foreclosure.  Unsecured creditors will receive the same 5% return on their claims under the debtor's plan as opposed to zero under a Chapter 7 liquidation.

| Creditor | Debt | Collateral/ Asset | Chapter 7 Foreclosure Return | Plan of Reorganization Return |
|---|---|---|---|---|
| 1.  BDCU | $45,455 | 2 Cars | Return of its collateral valued at less than its current debt | Payment of the debt over additional years. |
| 2.  BDCU | $1,817,325 | Pepper Lane | Return of its collateral valued at less than its current debt | Payment of the debt at a lower interest rate over additional years. |
| 3.  BDCU | $1,456,735 | Pama House | Return of its collateral valued at less than its current debt | Payment of the debt at a lower interest rate over additional years. |

| 4. Omaha Bank | $2,302,615 | Reynolds | Return of its collateral valued at less than its current debt | The return of its collateral and a payment equal to 5% of its claim. |
|---|---|---|---|---|
| 5. Unsecured Claims | | None | Nothing | To receive a payment equal to 5% of its unsecured claim. |

# EXHIBIT D

Dependence on Assumptions.   The Cash Flow Analysis is based on a number of estimates and assumptions that, although developed and considered reasonable by the Debtor's advisors, are inherently subject to significant economic, business and competitive uncertainties and contingencies beyond the control of the Debtor.   The Cash Flow Analysis is also based on the Debtor's best judgment of how likely it is that it will be able to retain the same level of income throughout the the life of the Plan and not have its typical and customary workload reduced.  Accordingly, there can be no assurance that the cash flow estimates reflected in this Cash Floww Analysis would be realized if the Debtor was unable to maintain his current income and actual results could vary materially and adversely from those contained herein.

### DEBTOR'S CASH FLOW ANALYSIS

**Current Income and Expenses**

**Monthly Income**

| | |
|---|---|
| Current Business Income | $  225,249.00 |
| **Total:** Current Income | $ 224,249.00 |

**Monthly Expenses**

| | |
|---|---|
| Operating Expense | $ 214,018.00 |
| **Total:** Current Expenses | $ 214,018.00 |

**Monthly Cash Flow Value** | **$ (11,213.00)**

   ***   Information taken from Debtor's **Monthly Operating Report** 2/14 a copy of which is attached hereto for reference.

## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF CALIFORNIA

In re: Reza Athari & Associates, P.L.L.C.

Case No. ___14-10724-abl___

CHAPTER 11
MONTHLY OPERATING REPORT
(GENERAL BUSINESS CASE)

### SUMMARY OF FINANCIAL STATUS

MONTH ENDED: ___Feb-14___          PETITION DATE: ___02/02/14___

1. Debtor in possession (or trustee) hereby submits this Monthly Operating Report on the Accrual Basis of accounting (or if checked here ____X____
the Office of the U.S. Trustee or the Court has approved the Cash Basis of Accounting for the Debtor).
Dollars reported in ___$1___

| | End of Current Month | End of Prior Month | As of Petition Filing |
|---|---|---|---|
| 2. **Asset and Liability Structure** | | | |
| a. Current Assets | $40,023 | | |
| b. Total Assets | $104,723 | | $64,700 |
| c. Current Liabilities | $23,289 | | |
| d. Total Liabilities | $960,120 | | $751,238 |

| | Current Month | Prior Month | Cumulative (Case to Date) |
|---|---|---|---|
| 3. **Statement of Cash Receipts & Disbursements for Month** | | | |
| a. Total Receipts | $248,504 | | $0 |
| b. Total Disbursements | $223,745 | | $0 |
| c. Excess (Deficiency) of Receipts Over Disbursements (a - b) | $24,759 | $0 | $0 |
| d. Cash Balance Beginning of Month | $15,063 | | $0 |
| e. Cash Balance End of Month (c + d) | $39,822 | $0 | $0 |

| | Current Month | Prior Month | Cumulative (Case to Date) |
|---|---|---|---|
| 4. Profit/(Loss) from the Statement of Operations | $11,231 | | $11,231 |
| 5. Account Receivables (Pre and Post Petition) | $0 | | |
| 6. Post-Petition Liabilities | $23,289 | | |
| 7. Past Due Post-Petition Account Payables (over 30 days) | $0 | | |

At the end of this reporting month:

| | | Yes | No |
|---|---|---|---|
| 8. | Have any payments been made on pre-petition debt, other than payments in the normal course to secured creditors or lessors? (if yes, attach listing including date of payment, amount of payment and name of payee) | | X |
| 9. | Have any payments been made to professionals? (if yes, attach listing including date of payment, amount of payment and name of payee) | X | |
| 10. | If the answer is yes to 8 or 9, were all such payments approved by the court? | | X |
| 11. | Have any payments been made to officers, insiders, shareholders, relatives? (if yes, attach listing including date of payment, amount and reason for payment, and name of payee) | | X |
| 12. | Is the estate insured for replacement cost of assets and for general liability? | | X |
| 13. | Are a plan and disclosure statement on file? | | X |
| 14. | Was there any post-petition borrowing during this reporting period? | | X |

15. Check if paid: Post-petition taxes ___X___ ;    U.S. Trustee Quarterly Fees ___N/A___ ;  Check if filing is current for: Post-petition
tax reporting and tax returns: ___X___ .
(Attach explanation, if post-petition taxes or U.S. Trustee Quarterly Fees are not paid current or if post-petition tax reporting and tax return filings are not current.)

I declare under penalty of perjury I have reviewed the above summary and attached financial statements, and after making reasonable inquiry believe these documents are correct.

Date: _____          _____
                                   Reza Athari

Revised 1/1/98

## STATEMENT OF OPERATIONS
### (General Business Case)
For the Month Ended _____ 02/28/14 _____

| | Current Month | | | | Cumulative (Case to Date) | Next Month Forecast |
|---|---|---|---|---|---|---|
| Actual | Forecast | Variance | | | | |
| | | | | **Revenues:** | | |
| $240,206 | | | 1 | Gross Sales | $240,206 | $240,000 |
| $15,810 | | | 2 | less: Sales Returns & Allowances | $15,810 | $15,000 |
| $224,396 | | | 3 | Net Sales | $224,396 | $225,000 |
| $0 | | | 4 | less: Cost of Goods Sold          (Schedule 'B') | $0 | $0 |
| $224,396 | | | 5 | Gross Profit | $224,396 | $225,000 |
| $0 | | | 6 | Interest | $0 | $0 |
| $853 | | | 7 | Other Income:       COLLECTIONS | $853 | $800 |
| $0 | | | 8 | | | |
| $0 | | | 9 | | | |
| $225,249 | | | 10 | **Total Revenues** | $225,249 | $225,800 |
| | | | | **Expenses:** | | |
| $0 | | | 11 | Compensation to Owner(s)/Officer(s) | $0 | $0 |
| $0 | | | 12 | Salaries | $0 | $0 |
| $0 | | | 13 | Commissions | $0 | $0 |
| $0 | | | 14 | Contract Labor | $127 | $100 |
| $127 | | | | Rent/Lease: | | |
| $0 | | | 15 | Personal Property | $0 | $0 |
| $10,667 | | | 16 | Real Property | $10,667 | $10,667 |
| $11,133 | | | 17 | Insurance | $11,133 | $11,000 |
| $0 | | | 18 | Management Fees | $0 | $0 |
| $999 | | | 19 | Depreciation | $999 | $999 |
| | | | | Taxes: | | |
| $0 | | | 20 | Employer Payroll Taxes | $0 | $0 |
| $0 | | | 21 | Real Property Taxes | $0 | $0 |
| $19 | | | 22 | Other Taxes | $19 | $0 |
| $0 | | | 23 | Other Selling | $0 | $0 |
| $3,471 | | | 24 | Other Administrative | $3,471 | $3,000 |
| $163 | | | 25 | Interest | $163 | $100 |
| $57,740 | | | 26 | Other Expenses:     ADVERTISING | $57,740 | $57,000 |
| $811 | | | 27 | AUTOMOBILE | $811 | $800 |
| $665 | | | 28 | EDUCATION | $665 | $600 |
| $112,986 | | | 29 | EMPLOYEE LEASING | $112,986 | $112,000 |
| $1,017 | | | 30 | MERCHANT FEES | $1,017 | $1,000 |
| $5,068 | | | 31 | MISCELLANEOUS | $5,068 | $5,000 |
| $1,625 | | | 32 | PROFESSIONAL FEES | $1,625 | $1,600 |
| $3,482 | | | 33 | REFERENCE MATERIAL | $3,482 | $3,400 |
| $3,559 | | | 34 | TELEPHONE | $3,559 | $3,500 |
| $484 | | | 35 | UTILITIES | $484 | $400 |
| $214,018 | | | 36 | **Total Expenses** | $214,018 | $211,166 |
| $11,231 | | | 37 | Subtotal | $11,231 | $14,634 |
| $0 | | | 38 | Reorganization Items: | $0 | $0 |
| $0 | | | 39 | Provisions for Rejected Executory Contracts | $0 | $0 |
| $0 | | | 40 | Interest Earned on Accumulated Cash from | $0 | $0 |
| $0 | | | | Resulting Chp 11 Case | | |
| $0 | | | 41 | Gain or (Loss) from Sale of Equipment | $0 | $0 |
| $0 | | | 42 | U.S. Trustee Quarterly Fees | $0 | $0 |
| $0 | | | 43 | | | |
| $0 | | | 44 | **Total Reorganization Items** | $0 | $0 |
| $11,231 | | | 45 | Net Profit (Loss) Before Federal & State Taxes | $11,231 | $14,634 |
| $0 | | | 46 | Federal & State Income Taxes | $0 | $0 |
| $11,231 | | | 47 | Net Profit (Loss) | $11,231 | $14,634 |

Attach an Explanation of Variance to Statement of Operations (For variances greater than +/- 10% only):

Revised 1/1/98

## BALANCE SHEET
### (General Business Case)
For the Month Ended ___02/28/14___

Assets

| | | From Schedules | Market Value |
|---|---|---|---|
| | **Current Assets** | | |
| 1 | Cash and cash equivalents - unrestricted | | $39,822 |
| 2 | Cash and cash equivalents - restricted | | |
| 3 | Accounts receivable (net) | A | $0 |
| 4 | Inventory | B | $0 |
| 5 | Prepaid expenses | | |
| 6 | Professional retainers | | |
| 7 | Other:  PETTY CASH | | $201 |
| 8 | | | |
| 9 | **Total Current Assets** | | $40,023 |
| | **Property and Equipment (Market Value)** | | |
| 10 | Real property | C | $1,200 |
| 11 | Machinery and equipment | D | $0 |
| 12 | Furniture and fixtures | D | $8,000 |
| 13 | Office equipment | D | $0 |
| 14 | Leasehold improvements | D | $0 |
| 15 | Vehicles | D | $55,500 |
| 16 | Other: | D | |
| 17 | | D | |
| 18 | | D | |
| 19 | | D | |
| 20 | | D | |
| 21 | **Total Property and Equipment** | | $64,700 |
| | **Other Assets** | | |
| 22 | Loans to shareholders | | |
| 23 | Loans to affiliates | | |
| 24 | | | |
| 25 | | | |
| 26 | | | |
| 27 | | | |
| 28 | **Total Other Assets** | | $0 |
| 29 | **Total Assets** | | $104,723 |

NOTE:

Indicate the method used to estimate the market value of assets (e.g., appraisals; familiarity with comparable market prices, etc.) and the date the value was determined.

Revised 1/1/98

## Liabilities and Equity
### (General Business Case)

**Liabilities From Schedules**

**Post-Petition**

**Current Liabilities**

| | | | |
|---|---|---|---|
| 30 | Salaries and wages | | |
| 31 | Payroll taxes | | |
| 32 | Real and personal property taxes | | |
| 33 | Income taxes | | |
| 34 | Sales taxes | | |
| 35 | Notes payable (short term) | | |
| 36 | Accounts payable (trade) | A | $0 |
| 37 | Real property lease arrearage | | |
| 38 | Personal property lease arrearage | | |
| 39 | Accrued professional fees | | |
| 40 | Current portion of long-term post-petition debt (due within 12 months) | | |
| 41 | Other:   CREDIT CARDS | | $33 |
| 42 |       CLIENT DEPOSITS | | $23,255 |
| 43 | | | |
| 44 | **Total Current Liabilities** | | $23,289 |
| 45 | **Long-Term Post-Petition Debt, Net of Current Portion** | | |
| 46 | **Total Post-Petition Liabilities** | | $23,289 |

**Pre-Petition Liabilities (allowed amount)**

| | | | |
|---|---|---|---|
| 47 | Secured claims | F | $47,304 |
| 48 | Priority unsecured claims | F | $0 |
| 49 | General unsecured claims | F | $889,527 |
| | (See Attached Statement to Schedule F) | | |
| 50 | **Total Pre-Petition Liabilities** | | $936,831 |
| 51 | **Total Liabilities** | | $960,120 |

**Equity (Deficit)**

| | | | |
|---|---|---|---|
| 52 | Retained Earnings/(Deficit) at time of filing | | ($856,397) |
| 53 | Capital Stock | | $1,000 |
| 54 | Additional paid-in capital | | |
| 55 | Cumulative profit/(loss) since filing of case | | |
| 56 | Post-petition contributions/(distributions) or (draws) | | |
| 57 | | | |
| 58 | Market value adjustment | | |
| 59 | **Total Equity (Deficit)** | | ($855,397) |
| 60 | **Total Liabilities and Equity (Deficit)** | | $104,723 |

Revised 1/1/98

# SCHEDULES TO THE BALANCE SHEET
### (General Business Case)

## Schedule A
### Accounts Receivable and (Net) Payable

| Receivables and Payables Agings | Accounts Receivable [Pre and Post Petition] | Accounts Payable [Post Petition] | Past Due Post Petition Debt |
|---|---|---|---|
| 0 -30 Days | | | |
| 31-60 Days | | | |
| 61-90 Days | | | |
| 91+ Days | | | $0 |
| Total accounts receivable/payable | $0 | $0 | |
| Allowance for doubtful accounts | | | |
| Accounts receivable (net) | $0 | | |

## Schedule B
### Inventory/Cost of Goods Sold

| Types and Amount of Inventory(ies) | Inventory(ies) Balance at End of Month | Cost of Goods Sold | |
|---|---|---|---|
| | | Inventory Beginning of Month | |
| | | Add - | |
| Retail/Restaurants - Product for resale | | Net purchase | |
| | | Direct labor | |
| Distribution - Products for resale | | Manufacturing overhead | |
| | | Freight in | |
| | | Other: | |
| Manufacturer - Raw Materials | | | |
| Work-in-progress | | Less - | |
| Finished goods | | Inventory End of Month | |
| | | Shrinkage | |
| Other - Explain | | Personal Use | |
| | | | |
| TOTAL | $0 | Cost of Goods Sold | $0 |

**Method of Inventory Control**
Do you have a functioning perpetual inventory system?
Yes_____    No_____
How often do you take a complete physical inventory?

Weekly _____
Monthly _____
Quarterly _____
Semi-annually _____
Annually _____
Date of last physical inventory was _____

Date of next physical inventory is _____

**Inventory Valuation Methods**
Indicate by a checkmark method of inventory used.

Valuation methods –
FIFO cost _____
LIFO cost _____
Lower of cost or market _____
Retail method _____
Other _____
Explain _____

## Schedule C
### Real Property

| escription | Cost | Market Value |
|---|---|---|
| BOOKS | $1,200 | $1,200 |
| | | |
| | | |
| | | |
| | | |
| Total | $1,200 | $1,200 |

## Schedule D
### Other Depreciable Assets

| Description | Cost | Market Value |
|---|---|---|
| Machinery & Equipment - | | |
| | | |
| | | |
| | | |
| Total | $0 | $0 |
| | | |
| Furniture & Fixtures - | | |
| OFFICE FURNITURE | $14,680 | $8,000 |
| SIGN | $3,500 | $0 |
| | | |
| Total | $18,180 | $8,000 |
| | | |
| Office Equipment - | | |
| OFFICE EQUIPMENT | $69,725 | $0 |
| | | |
| Total | $69,725 | $0 |
| | | |
| Leasehold Improvements - | | |
| LEASEHOLD IMPROVEMENTS | $412,649 | $0 |
| | | |
| Total | $412,649 | $0 |
| | | |
| Vehicles - | | |
| VEHICLES | $116,443 | $55,500 |
| | | |
| Total | $116,443 | $55,500 |

Revised 1/1/98

Schedule E
Aging of Post-Petition Taxes
(As of End of the Current Reporting Period)

| Taxes Payable | 0-30 Days | 31-60 Days | 61-90 Days | 91+ Days | Total |
|---|---|---|---|---|---|
| Federal | | | | | |
| Income Tax Withholding | | | | | $0 |
| FICA - Employee | | | | | $0 |
| FICA - Employer | | | | | $0 |
| Unemployment (FUTA) | | | | | $0 |
| Income | | | | | $0 |
| Other (Attach List) | | | | | $0 |
| Total Federal Taxes | $0 | $0 | $0 | $0 | $0 |
| State and Local | | | | | |
| Income Tax Withholding | | | | | $0 |
| Unemployment (UT) | | | | | $0 |
| Disability Insurance (DI) | | | | | $0 |
| Empl. Training Tax (ETT) | | | | | $0 |
| Sales | | | | | $0 |
| Excise | | | | | $0 |
| Real property | | | | | $0 |
| Personal property | | | | | $0 |
| Income | | | | | $0 |
| Other (Attach List) | | | | | $0 |
| Total State & Local Taxes | $0 | $0 | $0 | $0 | $0 |
| Total Taxes | $0 | $0 | $0 | $0 | $0 |

Schedule F
Pre-Petition Liabilities

| List Total Claims For Each Classification - | Claimed Amount | Allowed Amount (b) |
|---|---|---|
| Secured claims (a) | $47,304 | |
| Priority claims other than taxes | | |
| Priority tax claims | | |
| General unsecured claims (See Attached Statement to Schedule F) | $889,527 | |

(a)   List total amount of claims even it under secured.

(b)   Estimated amount of claim to be allowed after compromise or litigation. As an example, you are a defendant in a lawsuit alleging damage of $10,000,000 and a proof of claim is filed in that amount. You believe that you can settle the case for a claim of $3,000,000. For Schedule F reporting purposes you should list $10,000,000 as the Claimed Amount and $3,000,000 as the Allowed Amount.

Schedule G
Rental Income Information
Not applicable to General Business Cases

Schedule H
Recapitulation of Funds Held at End of Month

| | Account 1 | Account 2 | Account 3 | Account 4 |
|---|---|---|---|---|
| Bank | BDCU | BDCU | BDCU | BDCU |
| Account Type | CHECKING | SAVINGS | CHECKING | SAVINGS |
| Account No. | 900073053 009 | 900073053 009 | 900049908 006 | 900049908 006 |
| Account Purpose | BUSINESS | BUSINESS | BUSINESS | BUSINESS |
| Balance, End of Month | $42,616 | $5 | ($3,131) | $332 |
| Total Funds on Hand for all Accounts | $39,822 | | | |

Attach copies of the month end bank statement(s), reconciliation(s), and the check register(s) to the Monthly Operating Report.

## STATEMENT OF CASH RECEIPTS AND DISBURSEMENTS
Increase/(Decrease) in Cash and Cash Equivalents
For the Month Ended    02/28/14

| | | Actual<br>Current Month | Cumulative<br>(Case to Date) |
|---|---|---|---|
| | **Cash Receipts** | | |
| 1 | Rent/Leases Collected | $0 | |
| 2 | Cash Received from Sales | $225,249 | |
| 3 | Interest Received | $0 | |
| 4 | Borrowings | | |
| 5 | Funds from Shareholders, Partners, or Other Insiders | | |
| 6 | Capital Contributions | | |
| 7 | CLIENT DEPOSITS RECEIVED | $23,255 | |
| 8 | | | |
| 9 | | | |
| 10 | | | |
| 11 | | | |
| 12 | **Total Cash Receipts** | $248,504 | $0 |
| | **Cash Disbursements** | | |
| 13 | Payments for Inventory | | |
| 14 | Selling | | |
| 15 | Administrative | $3,471 | |
| 16 | Capital Expenditures | | |
| 17 | Principal Payments on Debt | | |
| 18 | Interest Paid | $163 | |
| | Rent/Lease: | | |
| 19 | Personal Property | $0 | |
| 20 | Real Property | $0 | |
| | Amount Paid to Owner(s)/Officer(s) | | |
| 21 | Salaries | | |
| 22 | Draws | | |
| 23 | Commissions/Royalties | | |
| 24 | Expense Reimbursements | | |
| 25 | Other | | |
| 26 | Salaries/Commissions (less employee withholding) | | |
| 27 | Management Fees | | |
| | Taxes: | | |
| 28 | Employee Withholding | | |
| 29 | Employer Payroll Taxes | | |
| 30 | Real Property Taxes | | |
| 31 | Other Taxes | $19 | |
| 32 | Other Cash Outflows: | | |
| 33 | ADVERTISING | $57,740 | |
| 34 | AUTOMOBILE | $811 | |
| 44 | CONTRACT LABOR | $127 | |
| 36 | DUE FROM AFFILIATES | $20,589 | |
| 35 | EDUCATION | $665 | |
| 37 | EMPLOYEE LEASING | $113,792 | |
| 39 | INSURANCE | $11,133 | |
| 40 | MERCHANT FEES | $1,017 | |
| 41 | MISCELLANEOUS | $5,068 | |
| 42 | PROFESIONAL FEES | $1,625 | |
| 43 | REFERENCE MATERIAL | $3,482 | |
| 45 | TELEPHONE | $3,559 | |
| 46 | UTILITIES | $484 | |
| 47 | **Total Cash Disbursements:** | $223,745 | $0 |
| | Net Increase (Decrease) in Cash | $24,759 | $0 |
| 49 | Cash Balance, Beginning of Period | $15,063 | |
| 50 | Cash Balance, End of Period | $39,822 | $0 |

Revised 1/1/98

## STATEMENT OF CASH FLOWS
### (Optional) Increase/(Decrease) in Cash and Cash Equivalents
For the Month Ended _____

| | | Actual Current Month | Cumulative (Case to Date) |
|---|---|---|---|
| | **Cash Flows From Operating Activities** | | |
| 1 | Cash Received from Sales | | |
| 2 | Rent/Leases Collected | | |
| 3 | Interest Received | | |
| 4 | Cash Paid to Suppliers | | |
| 5 | Cash Paid for Selling Expenses | | |
| 6 | Cash Paid for Administrative Expenses | | |
| | Cash Paid for Rents/Leases: | | |
| 7 | Personal Property | | |
| 8 | Real Property | | |
| 9 | Cash Paid for Interest | | |
| 10 | Cash Paid for Net Payroll and Benefits | | |
| | Cash Paid to Owner(s)/Officer(s) | | |
| 11 | Salaries | | |
| 12 | Draws | | |
| 13 | Commissions/Royalties | | |
| 14 | Expense Reimbursements | | |
| 15 | Other | | |
| | Cash Paid for Taxes Paid/Deposited to Tax Acct. | | |
| 16 | Employer Payroll Tax | | |
| 17 | Employee Withholdings | | |
| 18 | Real Property Taxes | | |
| 19 | Other Taxes | | |
| 20 | Cash Paid for General Expenses | | |
| 21 | | | |
| 22 | | | |
| 23 | | | |
| 24 | | | |
| 25 | | | |
| 27 | **Net Cash Provided (Used) by Operating Activities before Reorganization Items** | $0 | $0 |
| | **Cash Flows From Reorganization Items** | | |
| 28 | Interest Received on Cash Accumulated Due to Chp 11 Case | | |
| 29 | Professional Fees Paid for Services in Connection with Chp 11 Case | | |
| 30 | U.S. Trustee Quarterly Fees | | |
| 31 | | | |
| 32 | **Net Cash Provided (Used) by Reorganization Items** | $0 | $0 |
| 33 | **Net Cash Provided (Used) for Operating Activities and Reorganization Items** | $0 | $0 |
| | **Cash Flows From Investing Activities** | | |
| 34 | Capital Expenditures | | |
| 35 | Proceeds from Sales of Capital Goods due to Chp 11 Case | | |
| 36 | | | |
| 37 | **Net Cash Provided (Used) by Investing Activities** | $0 | $0 |
| | **Cash Flows From Financing Activities** | | |
| 38 | Net Borrowings (Except Insiders) | | |
| 39 | Net Borrowings from Shareholders, Partners, or Other Insiders | | |
| 40 | Capital Contributions | | |
| 41 | Principal Payments | | |
| 42 | | | |
| 43 | **Net Cash Provided (Used) by Financing Activities** | $0 | $0 |
| | **Net Increase (Decrease) in Cash and Cash Equivalents** | $0 | $0 |
| 45 | Cash and Cash Equivalents at Beginning of Month | | |
| 46 | Cash and Cash Equivalents at End of Month | $0 | $0 |

Revised 1/1/98

**Statement to Schedule F**
**General Unsecured Claims**
**For the Month Ended 02/28/14**

| | |
|---|---|
| Pre Petition Balance Reported on Filing | $703,934 |
| | |
| Pre Petition Balances Unreported on Filing | |
| Client Deposits | $54,432 |
| Due to Affiliates | $151,750 |
| | |
| Current Period Adjustments on Pre Petition Liabilities | |
| Due to Affiliates | -$20,589 |
| | |
| **Current Period General Unsecured Claims** | **$889,527** |

# EXHIBIT E

1.  **KEMP BROADCASTING INC.** – 3999 Las Vegas Bvld. South, Suite K, Las Vegas, NV 89119-1097, Order Number 1980-00013, Salesperson Klara Horton, Ph. 702-433-3529, 702-736-6161, Order Start date: 2/3/14 and end date: 2/1/15, $8,840

2.  **THE LAMAR COMPANIES**, 1863 Helm Drive, Las Vegas, NV 89119, Phone: 702-873-4600, Contract number 2000309, Dated 8/6/2013 and 8/17/14 end date, Customer Account No. 247365-0, $3500

3.  **THE LAMER COMPANIES**, 1863 Helm Drive, Las Vegas, NV 89119 Contract number 1935343 dated 4/16/13 ending 5/4/14, $10,000, Customer Account Number 247365-0

4.  **OP OUTDOOR PROMOTIONS**, 7521 Eastgate Road, Henderson, NV 89011, Ph. 702-932-4848, Atten: Blake Bradley Ph. 702-932-4834 dated 10-24-12 with 9/14/14 end date, $196,800

5.  **OP OUTDOOR PROMOTIONS**, 7521 Eastgate Road, Henderson, NV 89011 start date 11/04/13 to 11/02/14 end date $6750, Atten: Angela Nelson Ph. 702-932-4841

6.  **REAGAN NATIONAL ADVERTISING**, 1775 N. Warm Springs, Road., Salt Lake City, UT 84116, Phone: 801-521-1775, dated 10/28/13

7.  **REAGAN NATIONAL ADVERTISING**, 1775 N. Warm Springs, Road., Salt Lake City, UT 84116 Contract dated 1/3/14

8.  **REAGAN NATIONAL ADVERTISING**, 1775 N. Warm Springs, Road., Salt Lake City, UT 84116 Contract dated 11-22-13

9.  **LEXIX-NEXUS**, Law Firm Subscription Plan, 555 W. Fifth Street, Suite 4500,

Los Angeles, CA 90013, starting 12/01/13 to 11/30/14 (Legal research contract)

10. **MARTINDALE - HUBBEL**, P.O. Box 894166, Los Angeles, CA 90189-4166 (Lawyer advertising)

11. **RESORT HOLDINGS 3**, 2801 N. Tenaya Way, Ste. C, Las Vegas, NV 89128 (Disputed commercial lease)

12. **ALLIED**, 3080 S. Durango Drive, Ste. 208, Las Vegas, NV 89117 (collection agency for bad debt)