_____
Honorable August B. Landis
United States Bankruptcy Judge

**Entered on Docket**
**June 03, 2014**

UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEVADA

\* \* \* \* \* \*

| | | |
|---|---|---|
| In re: | ) | BK-14-10724-ABL |
| | ) | |
| REZA ATHARI & ASSOCIATES, P.L.L.C., | ) | Chapter 11 |
| | ) | |
| Debtor | ) | Hearing Date: May 7, 2014 |
| | ) | Hearing Time: 9:30 a.m. |

**ORDER ON APPLICATION TO EMPLOY COUNSEL**[1]

On February 10, 2014, debtor Reza Athari & Associates, P.L.L.C. ("Associates"), filed an Application to Employ Counsel, seeking to retain Mark B. Pyper of Owens & Pyper, P.L.C. ("Pyper") as estate counsel (the "Employment Application"). (ECF No. 10). An objection to the Employment Application ("Objection") was filed by Tracy Hope Davis, United States Trustee for Region 17 ("U.S. Trustee"). (ECF No. 48). Pyper submitted a declaration in support of the Employment Application on April 15, 2014. (ECF No. 52).[2]

---

[1] In this Order, all references to "ECF No." are to the numbers assigned to the documents filed in the case as they appear on the docket maintained by the Clerk of the Court, unless otherwise noted. The Court takes judicial notice of all documents identified by a specific "ECF No." in this Order pursuant to FED. R. EVID. 201(a) - (d), inclusive. References to "Section" are to provisions of the Bankruptcy Code, 11 U.S.C. §§ 101–1532. "FRBP" refers to the Federal Rules of Bankruptcy Procedure and "LR" refers to the Local Bankruptcy Rules of Practice for the District of Nevada. "N.R.P.C." refers to the Nevada Rules of Professional Conduct.

[2] Pyper filed two declarations in support of the Employment Application (ECF Nos. 51, 52), but only the later declaration was signed. For purposes of this Order, the Court will rely on the signed declaration. (ECF No. 52).

On April 16, 2014, an initial hearing was held on the Employment Application. Mark B. Pyper appeared on behalf of Associates. Jonas Anderson appeared on behalf of the U.S. Trustee. The Court entered an order setting the matter for a second hearing on May 7, 2014, to give the parties additional time to brief issues arising from the Employment Application and the Objection to it. (ECF No. 57). Specifically, the Court sought input from the parties as to whether (a) a Lease Dispute (as defined later in this Order) precluded Pyper's proposed simultaneous representation of the estates in the separate Chapter 11 cases filed by Associates and its managing member, Reza Athari ("Reza") under Section 327(a), and (b) joint administration would resolve the related concerns voiced by the U.S. Trustee in her Objection to the Employment Application.

Pyper late-filed his brief on April 28, 2014. (ECF No. 64). The U.S. Trustee timely filed her brief on May 5, 2014. (ECF No. 68). On May 7, 2014, the Court conducted a second hearing on the Employment Application. Appearances of counsel were noted on the record. Arguments were presented. When the arguments were finished, the matter was submitted for resolution by the Court.

**FINDINGS OF FACT**

On February 3, 2014, Associates commenced this case by filing a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.[3] (ECF No. 1). That same day, Reza commenced an individual bankruptcy case by filing a voluntary petition for relief, also under Chapter 11 of the Bankruptcy Code.[4] Reza is the managing member of Associates. (ECF No. 1 at 3).

On February 10, 2014, an application to employ Pyper as estate counsel was filed in the Individual Case.[5] The Court heard and orally granted Pyper's unopposed employment application

---

[3] The case will be referred to in this Order as the "Associates Case."

[4] Reza's spouse is listed on the petition as a joint debtor; *see generally In re Reza Athari & Fataneh R. Athari*, Case No. BK-S-014-10723-ABL, ECF No. 1 at 1. While Reza and his wife filed a joint bankruptcy petition, their case is referred to in this Order as the "Individual Case."

[5] (Individual Case, ECF No. 10).

2

in the Individual Case on April 16, 2014.[6]

Also on February 10, 2014, Associates filed the Employment Application now pending before the Court. (ECF No. 10). The Employment Application filed by Associates seeks to employ Pyper "as general bankruptcy counsel, at the expense of the Chapter 11 estate, as of the commencement of this case." (*Id.* at 3). The Employment Application states that Pyper has assisted Associates in the preparation of the petition, schedules and statement of affairs to be filed in connection with this matter, and will continue to do so. (*Id*. at 1). The Employment Application also stated that Pyper "does not have any interest adverse to the Debtors [sic] or the estate." (*Id.* at 3).

On February 27, 2014, a Statement of Financial Affairs ("SOFA") and a Disclosure of Compensation of Attorney for Debtor(s) was filed in the Individual Case. (Individual Case, ECF No. 32 at 29, 37). Section 9 of the SOFA reflects that Reza paid Pyper $10,000 in September 2013 as a "payment[] related to debt counseling or bankruptcy." (*Id*. at 32).[7] The Disclosure of Compensation form, however, indicates that prior to filing the Individual Case, Pyper had received "$0.00" in compensation and had agreed to accept "$0.00" in compensation for his legal services. (Individual Case, ECF No. 32 at 37).

In the Associates Case, Pyper reported in his Disclosure of Compensation form that he had received $10,000 prior to the filing,[8] been promised $45,000 for his services in the Associates Case, and was owed a balance of $35,000. (ECF No. 49 at 34). The SOFA filed in the Associates Case also indicates that Pyper received $10,000 in September 2013 as "payment[] related to debt

---

[6]No order has been uploaded related to Pyper's employment application in the Individual Case. Under LR 9021(a)(5), if an order is not uploaded within 35 days of the hearing, the matter is deemed withdrawn without prejudice, subject to a motion under FRBP 9024.

[7]Athari certified that he "read the answers contained in the statement of financial affairs and any attachments thereto and that they are true and correct." (Individual Case, ECF No. 32 at 41).

[8](ECF No. 52 at ¶ 9).

3

counseling or bankruptcy." (ECF No. 49 at 29).[9]

Associates filed schedules in support of its bankruptcy petition on March 12, 2014. (ECF No. 39). Schedule H discloses in pertinent part that:

> There is a dispute whether or not [Associates] is liable for any damages to [a] prior landlord. The underlying commercial lease was signed only by Reza Athari and this signature was not in the capacity as managing member of [Associates].

(ECF No. 39 at 23)(the "Lease Dispute"). On its face, Schedule H filed in the Associates Case indicates that Reza signed the lease at the heart of the Lease Dispute in his individual capacity, and that as a result, Reza is individually liable for any damages arising from the Lease Dispute - - not Associates. (*Id.*).

On April 4, 2014, the U.S. Trustee filed the Objection to Pyper's Employment Application in the Associates Case. (ECF No. 48). The Objection posits that Pyper cannot be authorized to simultaneously serve as bankruptcy counsel for the Associates estate on the one hand, and the bankruptcy estate of its managing member, Reza, on the other. (*Id.* at 2-3). The essence of the U.S. Trustee's Objection is that because Pyper already represents the estate in the Individual Case, and Schedule H filed by Associates plainly states that a dispute exists as to whether Reza should be held personally liable for any damages arising from to the Lease Dispute instead of Associates, Pyper cannot satisfy the retention standards imposed by Section 327(a). (*Id.* at 5-6). For that reason, the U.S. Trustee argues that the Employment Application must be denied.

During the April 16, 2014 and May 7, 2014 hearings, Pyper orally responded to the U.S. Trustee's Objection, asserting that the mere potential for a conflict between the estates in the Individual Case and the Associates Case due to the Lease Dispute is not enough to prohibit Associates from choosing its own bankruptcy counsel. For the reasons more fully set forth below, the Court finds that simultaneously representing the estates in the Individual Case and the Associates Case presents more than the potential for conflict between the estates Pyper seeks to

---

[9]Athari, in his capacity as the Debtor's Managing Member, certified that the information in that SOFA was "true and correct." (ECF No. 49 at 33).

4

simultaneously represent.

## CONCLUSIONS OF LAW

**A.  Section 327(a) Governs the Employment Application**

Section 327(a) sets forth the minimum requirements which must be satisfied by a professional seeking court approval to serve as counsel for a Chapter 11 debtor's estate.  11 U.S.C. § 327(a).  Section 327(a) provides, in pertinent part, that:

> Except as otherwise provided in this section, the trustee, with the court's approval, may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that *do not hold or represent an interest adverse to the estate*, and that *are disinterested persons*, to represent or assist the trustee in carrying out the trustee's duties under this title.

11 U.S.C. § 327(a) (emphasis added).  Hence, professionals seeking authorization to represent a Chapter 11 estate under Section 327(a) must neither hold, nor represent, an interest adverse to the estate.  Additionally, such professionals must be disinterested.  *Id*.

The phrase "interest adverse to the estate" is not defined by the Bankruptcy Code.  *Dye v. Brown (In re AFI Holding, Inc.)*, 530 F.3d 832, 845 (9th Cir. 2008).  As such, its meaning has been developed by the courts on a case by case basis.  *See e.g.*, 7 COLLIER ON BANKRUPTCY ¶ 1103.04[2] (Alan N. Resnick & Henry J. Sommer eds., 16th ed. 2013).  Generally, "[a]n adverse interest will be an economic interest of the person represented by the professional that is in conflict with or that could come into conflict with the interest of the constituency represented by the professional or jeopardize the professional's integrity."[10]  *Id.*  In *In re AFI Holding, Inc.*, the Ninth Circuit held that:

---

[10]This is consistent with Nevada Rule of Professional Conduct 1.7, which states:

[A] lawyer shall not represent a client if the representation involves a concurrent conflict of interest.  A concurrent conflict of interest exists if: (1) [t]he representation of client will be directly adverse to another client; or (2) [t]here is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client.

N.R.P.C. 1.7(a) (2006).

5

> A generally accepted definition of "adverse interest" is the (1) possession or assertion of an economic interest that would tend to lessen the value of the bankruptcy estate; or (2) possession or assertion of an economic interest that would create either an actual or potential dispute in which the estate is a rival claimant; or (3) possession of a predisposition under circumstances that create a bias against the estate.

*AFI Holding,* 530 F.3d at 845 (in the context of a trustee's lack of disinterestedness in having adverse interest under § 101(14)). *See also Tevis v. Wilke, Fleury, Hoffelt, Gould & Birney, LLP (In re Tevis)*, 347 B.R. 679, 688 (B.A.P. 9th Cir. 2006).

"Adverse interest" generally means representing clients in matters outside of bankruptcy and relates to a wide-ranging series of circumstances, including but not limited to pre-petition and post-petition relationships the professional has with the debtor[11] as well as any parties affiliated with the debtor and creditors. "More generally, this definition includes any interest or relationship, however slight, 'that would even faintly color the independence and impartial attitude required by the Code and Bankruptcy Rules.'" *In re Granite Partners, L.P.*, 219 B.R. 22, 33 (Bankr. S.D.N.Y. 1998) *(citing Kravit, Gass & Weber, S.C. v. Michel (In re Crivello)*, 134 F.3d 831, 835 (7th Cir. 1998)); *In re Project Orange Assocs., LLC*, 431 B.R. 363, 370 (Bankr. S.D.N.Y. 2010); *In re BH&P Inc.*, 949 F.2d 1300, 1308 (3d Cir. 1991); *In re Crivello*, 134 F.3d at 835; *In re Black Hills Greyhound Racing Ass'n*, 154 B.R. 285, 292 (Bankr. D.S.D. 1993).

There is, as some courts have observed, some overlap between the "disinterested" and "interest adverse" litmus tests established under Section 327(a). Section 101(14)(C) provides that a person is not disinterested if the person has "an interest materially adverse to the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in the debtor," while Section 327(a) permits the employment of a professional person only if that person "do[es] not hold or represent an interest adverse to the

---

[11]*In re Persaud*, 467 B.R. 26, 37 (Bankr. E.D.N.Y. 2012) ("It is fundamental that a lawyer may not represent an interest that is adverse to that of a current client . . . Where the relationship is a continuing one, adverse representation is prima facie improper . . . .") (alterations and citation omitted).

6

1 estate." Some courts have held that these two tests are fundamentally the same. 3 COLLIER ON
2 BANKRUPTCY ¶ 327.04[2][b] 327-33 (citations omitted).

3 The crux of the issue here is whether the estate in the Associates Case and the estate in the
4 Individual Case each hold interests adverse to the other. If so, then Pyper may not represent
5 Associates due to his existing representation of the estate in the Individual Case. If they not, then
6 Pyper may be employed by and represent both estates at the same time. Stated another way, Pyper
7 may not represent the estate in the Associates Case if it has an economic interest that would tend to
8 decrease the value of, or create an actual or potential dispute with his existing client, the estate in
9 the Individual Case.

10  **B.  The Employment Application Must be Denied, Because Pyper Currently Represents an Entity That Holds an Interest Adverse to the Associates**
11  **Estate.**

12 Associates contends that Pyper is disinterested, and does not hold or represent an interest
13 adverse to the Associates' estate by virtue of his representation of the estate in the Individual Case.
14 (ECF No. 10 at 3; ECF No. 52 at ¶ 6). The U.S. Trustee contends that the Associates' estate does
15 hold an interest adverse to the estate in the Individual Case due to the Lease Dispute, and that the
16 combination of Pyper's current representation of the estate in the Individual Case and the
17 provisions of Section 327(a) prohibit him from undertaking representation of the Associates' estate
18 now. (ECF No. 48 at 5-6).

19 Schedule H, signed under oath by Reza in his capacity as Managing Member of Associates
20 and filed by Pyper in the Associates Case, states concisely that because Reza did not sign the lease
21 underpinning the Lease Dispute in his capacity as Associates' Managing Member, Reza is
22 personally liable for any damages arising from the Lease Dispute - - not Associates. (ECF No. 39
23 at 23). Schedule H further makes it clear that Associates believes that liability for damages arising
24 from the Lease Dispute should be shifted to Pyper's existing client: the estate in the Individual
25 Case.

26 If the Employment Application were granted, Pyper would represent the Associates' estate

7

and the estate in the Individual Case simultaneously, and would also bear the fiduciary duty of representing the best interests of each estate at the same time. In that role, and in light of the content of Schedule H filed in the Associates Case, Pyper would necessarily face the unenviable task of attempting to shift the damage claims arising from the Lease Dispute from one estate to the other. Carrying out that task would necessarily "lessen the value of the bankruptcy estate" to which the damages were shifted; create either an actual or potential dispute in which one estate client is a rival claimant vis-a-viz the other estate client; and inevitably reveal a bias in favor of one estate client against the other. The facts here are a textbook example of why Section 327(a) prohibits professionals from undertaking representation of a Chapter 11 estate when they already represent an entity that holds an interest adverse to that estate.

Notwithstanding the adverse interests held by the Associates' estate and the estate in the Individual Case against one another, the Court is invited to approve the Employment Application. The Court declines the invitation. Even if the Court were to assume, for the sake of argument, that there is only a potential conflict of interest between the two estates as a result of the Lease Dispute, the Court is not convinced that there are sufficient remedies available if that potential conflict[12] were to later ripen into an actual conflict.

The Court is mindful that it is authorized to reduce, or deny altogether, compensation for services or reimbursement of expenses of a professional employed under Section 327 as a penalty if "such professional person is not a disinterested person, or represents or holds an interest adverse to the interest of the estate with respect to the matter on which such professional person is employed." 11 U.S.C. § 328(c). That remedy does not, however, adequately address the impaired representation an attorney provides while laboring under the burden of adverse interests held by

---

[12] At least one author refers these "potential" adverse interests as "dormant" adverse interests. N. Rapoport, *Turning and Turning in the Widening Gyre: The Problem of Potential Conflicts of Interest in Bankruptcy*, 26 Conn. L. Rev. 913 (1994). The description is accurate, as the interest can essentially spring to life and become active, needing to be dealt with by the court and the parties.

8

multiple clients.  Additionally, denying compensation for services and reimbursement for expenses after the fact is largely unfair to the professional that provided the services and incurred the expenses, when the professional could never meet the retention standards imposed by Section 327(a), and should never have been appointed in the first place.  Where, as here, there is an actual adverse interest (or at the very least a strong likelihood that a potential adverse interest will ripen into an actual conflict of interest), the best solution is to deny appointment of the professional at the outset of the case.  That is the conclusion of law reached by the Court in connection with the Employment Application now pending before it.

### C.    Remaining Issues.

An application to employ a professional under Section 327(a) may also be denied based on a lack of disinterestedness.  The issue of Pyper's disinterestedness status is mentioned, but not addressed in depth, in the Employment Application, the U.S. Trustee's Objection, and the related papers filed with the Court.  As a result, and in view of the adverse interest analysis above, the Court declines to reach the question of Pyper's disinterestedness in the context of Section 101(14).

Finally, the Court will not render a decision as to the propriety of either joint administration or substantive consolidation of the Associates Case and the Individual Case.  With respect to joint administration, the only party that has requested such relief is Reza, through filings made in the Individual Case.  (Individual Case, ECF No. 41).  However, no hearing has ever been held on the matter because no notice of hearing has been filed.  In addition, no motion for substantive consolidation has been filed by either Associates or Reza.[13]  Unless and until such relief is requested by formal motion and properly set for hearing, it is procedurally premature to order joint administration or substantive consolidation of the Associates Case and the Individual Case.

### ORDER

Based upon the forgoing Findings of Fact and Conclusions of Law,

**IT IS ORDERED** that the U.S. Trustee's Objection (ECF No. 48) is **SUSTAINED**.

---

[13]The Associates' brief in support of the Employment Application (ECF No. 64) refers to substantive consolidation with the Individual Case, however, this request was not brought by motion, noticed or set for hearing as required.

9

    **IT IS FURTHER ORDERED** that the Debtor's Employment Application (ECF No. 10) is **DENIED**.

Notice and copies sent through:

    CM/ECF ELECTRONIC NOTICING AND/OR BNC MAILING MATRIX

###